BOATMEN'S SAVINGS BANK *vs.* THE WESTERN AND ATLANTIC RAILROAD COMPANY.

1. Where by the terms of the bill of lading the goods are consigned to the order of the consignor, and the bill is indorsed in blank, and negotiated for value as security for a draft drawn by the consignor on a third person, the carrier has no right to deliver the goods to such third person without production of the bill of lading or authority from the holder thereof.

2. The special facts of this case did not put the holder of the bill upon notice that a promissory note negotiated for value by the consignor to the same holder, was given after delivery of the goods and to cover the purchase price thereof. The payment of the note by the maker did not release the carrier from liability on the bill of lading. There was no evidence of any participation by the holder in the fraud committed by the consignor.

3. Bills of lading are amongst the most important securities of commerce, and are not to be defeated by mere presumption, or without clear evidence.

April 16, 1888.

Negotiable instruments. Common carriers, Bailments. Promissory notes. Bill of lading. Before Judge VAN EPPS. City court of Atlanta. December term, 1887.

Reported in the decision.

B. F. ABBOTT, for plaintiff.

JULIUS L. BROWN and A. H. COX, for defendant.

BLECKLEY, Chief Justice.

On November 19th, 1884, a railway company issued, at Litchfield, Illinois, a bill of lading covering a con-

signment of 900 sacks of flour, 29,100 pounds, from the Planet Milling Company, consigned to its own order, to Atlanta, Georgia; the bill of lading having upon it an indication that J. C. McMillan & Co. were to be notified. On the same day, the Planet Milling Company drew a draft for $576.51 upon J. C. McMillan & Co., payable to its own order one month after date. It indorsed the draft in blank, and negotiated it, together with the bill of lading, also indorsed in blank, to the Boatmen's Savings Bank, and received value. The effect of that transaction was to pass the title to the flour from the milling company to the bank, as security, for the acceptance of this draft.

On the 22d of November, this draft (and as may be presumed, with the bill of lading attached,) was presented for acceptance, and acceptance was refused, the drawees noting upon the draft in pencil this memorandum: "This flour was bought on sixty days' time. Draw and we will accept." There was no signature to the memorandum. The draft was protested for non-acceptance, and in the protest, as a reason for non-acceptance, were the words: "Goods bought on sixty days' time." Three days thereafter, to wit, November 25th, the flour was delivered by the Western & Atlantic Railroad, the terminal member of this shipping line, to J. C. McMillan & Co., the bill of lading being out in the hands of this bank. Some two weeks thereafter, the precise time not stated, J. C. McMillan & Co. executed in Atlanta and sent to the milling company a promissory note for $580.73, dating that note November 19th, 1884, and making it payable to the order of the Planet Milling Company, and appointing as the time of payment sixty days after date. On the 3d of December following, this note, being in the hands of the Planet Milling Company, was discounted in due course of business by this same

bank, the Planet Milling Company indorsing and receiving value for it, and the transaction taking place long before the maturity of the note. On December 22d, when the draft would have matured had it been accepted, it was presented to the drawees for payment, and payment being refused, it was protested for nonpayment. When the note matured it was paid, and after that, some time in January, 1885, the bank caused a demand to be made upon the railroad company in Atlanta, the point of destination, for the flour, and on failure to deliver, this action was brought, the declaration being filed on the 19th of May, 1885. The action was founded upon the contract in this bill of lading; the declaration alleges a breach of it, demand for the flour and failure or refusal to deliver. The action was pending for almost a year when the defendant filed a plea of fraud, alleging a combination between the bank and the milling company to get pay for this flour twice, and set up the fraud as a defence.

The case was tried by a jury, and a verdict was rendered for the defendant. A motion for a new trial was made on several grounds, complaining of the charge of the court, and on the general grounds that the verdict was contrary to law, evidence, etc. The court refused the motion for a new trial, and that refusal is the cause of the present writ of error.

1. The consignment being to the order of the consignor, the indorsement of the bill of lading by the consignor was the expression of such an order, and the railway company and the lines with which it was connected in this contract for carriage and delivery had no right to deliver to J. C. McMillan & Co. without production of the bill of lading or some proper accounting for it. North Penn. R. R. *vs.* Commercial Bank, 103 U. S. 727; *Bass vs. Glover*, 63 *Ga.* 745.

Where by the terms of the bill of lading the goods are consigned to the order of the consignor, and the bill is indorsed in blank and negotiated for value as security for a draft drawn by the consignor on a third person, the carrier has no right to deliver the goods to such third person without production of the bill of lading or authority from the holder thereof.

2. There is no pretence that the draft and the bill of lading as security for its acceptance were not taken together in good faith and for value; so that the only possible imputation upon the bank is *mala fides* in taking the note. The bank was authorized, under the circumstances, to advance its money upon that note and become the purchaser of it. Its rights then attached to collect the note as well as the draft, and nothing which occurred subsequently, so far as this record indicates, defeated the right as to either. It is insisted that the bank had enough to put it upon inquiry as to whether the milling company had a right to negotiate this note on the 3d of December. It is plain that the milling company ought not to have had possession of the note. Whose fault was it that it was in the power of the milling company to negotiate the note wrongfully? It was the joint fault of the railway company and of Messrs. McMillan & Co. The railway company had no right to deliver the flour without the production of the bill of lading; and McMillan & Co., having received the flour, and knowing that the bill of lading had been indorsed, and knowing that a draft had been drawn for the money and the draft indorsed, had no right to send this note to the Planet Milling Company; and yet they did send it, and on the face of the note authorized the payee to negotiate it; the note being a promise to pay to the order of the Planet Milling Company. This bank took Messrs. McMillan & Co. at their word; and it had a right

to do so. McMillan & Co. promised to pay the bank, or any one else, the amount of this note, who would produce the order of the Planet Milling Company for such payment. There is not a word of evidence in the record that, at the time this transaction took place, the bank had the slightest notice or intimation that the note covered the price of this flour. The note was not for the same amount as the draft. Moreover, the memorandum which had been put upon the draft gave no intimation that a note had been or would be given for the price, for the memorandum said, "Draw and we will accept." It may put the bank upon notice that another draft was or might be out for the same thing, although perhaps not for the same amount, but it was certainly no notice that a note would be made for the same thing, and especially a note bearing date earlier than the time the memorandum was made. On the face of the note it appeared to have been executed on the 19th of November, and it was certain that this memorandum was not made until the 22d of November. The railroad company was in fault, and McMillan & Co. were in fault, but this bank was in no fault.

What diligence did the bank owe to the railway company or to McMillan & Co.? Every one owes diligence to sound morality and pure principles of honesty, and that much diligence every one must exercise; but here are special claims upon diligence on the part of people whose negligence caused this whole trouble and brought about all this complication. What right did they have to insist upon minute examination of paper so different? The amounts differed, and neither the amounts, dates nor character of the paper indicated anything wrong. We think the jury should not have found this verdict. There was no proper evidence to base it on. And allowing that the charge of the court was correct,

they found contrary to the principles of the charge, contrary to law. This money ought to be paid; and a new trial should have been granted.

3. A great part of the wealth of the commercial world is afloat every day upon such instruments as this bill of lading, and to defeat the rights of purchasers to their security, there ought to be notice, and there ought to be clear evidence of it. Mere presumption will not suffice.

Judgment reversed.