## SELLERS v. SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY.

1. Inasmuch as the law imposes liability upon a common carrier when a delivery of freight is made by mistake to a person not entitled to receive the same, it is the right of the carrier to call upon an unknown person claiming a shipment to identify himself and establish his ·claim thereto ; and where a bill of lading covering the shipment has been issued, the carrier may demand its production as a condition precedent to making delivery.

2. The charge of the court was in accord with the law as above announced, and fully and fairly presented to the jury the issues they were called on to determine, notwithstanding some slight verbal inaccuracy of expression.

3. Though the court, in passing upon a demurrer to the plaintiff's petition, may have erroneously held he was not entitled to recover punitive damages in the event he established his alleged cause of action, the error so committed does not constrain the ordering of another trial, the jury having found upon ample evidence that the defendant railway company had not committed any breach of its duty as a common carrier.

Submitted May 23, — Decided June 16, 1905.

Action for damages. Before Judge Mitchell. Echols superior court. November 21, 1904.

*W. E. Thomas* and *Wilcox & Johnson,* for plaintiff.
*Kay, Bennet & Conyers* and *R. G. Tison,* for defendant.

FISH, P. J. The plaintiff, Philip Sellers, purchased a bill of goods from a mercantile firm in Brunswick, Ga., and gave directions to have the goods shipped to him at Statenville, Ga. The goods duly arrived at that station over the line of the defendant railway company, and the plaintiff called upon the local agent to deliver them to him. They were marked with his initials, "P. S." The agent declined to make delivery to him. According to the testimony of the plaintiff, the reason assigned by the agent for refusing to do so was that he had not received the way-bill and did not know the amount of the freight charges, though he at the same time expressed some doubt as to the plaintiff being the consignee of the ·goods. The plaintiff had but recently established a place of business twenty-four miles from the station, was a stranger in the community, and was unknown to the agent. The plaintiff offered to deposit with the agent $20 to cover the freight charges, but the agent declined to receive the money, saying it was against the orders of the company to deliver freight in the absence of a way-bill.

He further said he did not know the plaintiff nor whether he was "the party entitled to the goods or not, and didn't know whether the goods were shipped to order, notify, bill of lading attached, or not. That was the reason he gave [for refusing to make delivery], and the only one. The agent said he wanted to see the way-bill; he never mentioned the bill of lading at all." This occurred about the 23d or 24th of. December. The plaintiff subsequently sent a neighbor, who was known to the agent, for the goods. The agent declined to deliver them, on the ground that he had not received the way-bill and did not know what the freight charges were, but promised to deliver the goods to the teamster of this neighbor as soon as the amount of the freight charges was ascertained. Acting in behalf of the plaintiff, this party again called for the goods, but was confronted with the same statement from the agent. No tender of the goods was ever made to the plaintiff until some ten months thereafter, when he declined to accept delivery, as the goods consisted of provisions and supplies and had greatly deteriorated in value. Upon this evidence the plaintiff relied as sustaining his complaint that the defendant company had been guilty of a conversion of the goods and was liable to account to him for the value of the same. In support of its defense that it had committed no breach of its public duty as a carrier, the company introduced as a witness its local agent, who testified substantially as follows: He had himself but recently gone to Statenville; and while he had seen the plaintiff once in the latter part of November, the plaintiff was unknown to him when he came to see about his goods. The plaintiff being a stranger to him, he asked for the bill of lading, not knowing whether or not the goods, which were simply marked " P. S.," belonged to him. The plaintiff replied that he did not have the bill of lading; whereupon the agent said that if he had the "purchase-bill" and it was marked paid, the goods would be delivered to him upon his paying five dollars. The agent thought the goods might have been shipped "to order, notify," and he knew that if they were so shipped, and he should deliver them to the wrong party, without requiring the production of the bill of lading, he would have to pay for the goods. Plaintiff did offer to pay the freight, but the agent had not received the way-bill and

did not know the amount of the charges.   He found out, about January 7th, that the goods were intended for the plaintiff, and, on the same day he received this information, tendered the shipment to him; but the plaintiff refused to accept delivery, saying he had already instituted suit against the company. The agent had previously delivered freight to responsible persons whom he knew, without requiring them to produce a bill of lading.   His reason for calling on the plaintiff to show a bill of lading was that the plaintiff was a stranger to him, and he did not know whether or not the plaintiff was the proper person to whom to deliver the shipment.   The jury accepted the explanation given by the company's agent excusing his refusal to make delivery of the goods prior to January 7, and the court below declined to set aside the verdict which they returned in favor of the defendant.

1. Inasmuch as the law exacts of a common carrier of freight that it shall ascertain beyond question, before delivering goods to a person claiming the right to receive them, that he is the proper person to whom to make delivery, and puts upon the carrier the entire risk of making a mistake as to the identity of the consignee, it is but reasonable that the carrier should be permitted to exercise the right of calling on the consignee to establish his claim to the shipment.   Hutch. Car. (2d ed.) §344.   If the person who applies for the goods is not known to the carrier, and there is any doubt as to his right to receive them, the carrier "should require the most unquestionable proof of his identity." Ibid.   And, to this end, "the carrier may properly require the production of the bill of lading by the consignee, as evidence of his right to demand delivery of the goods."   Ibid.   § 423a.   Accordingly it was held by this court in *Bass* v. *Glover*, 63 *Ga.* 745, that "A railroad company completing the transportation of freight, begun by other common carriers whose lines are connected with the railroad by an intermediate line or lines, may, for its own security, exact the production of the bill of lading before making delivery of the goods to the consignee."   Failure to do so may, indeed, establish liability for an improper delivery to him.   *Boatmen's Savings Bank* v. *Railroad Co.*, 81 *Ga.* 221. The company sued in the present case was not the initial carrier, and its local agent was not presumed to know what were the

terms of shipment until he received the way-bill or a bill of lading was produced by the plaintiff. It is clear that if the agent's version of what occurred be true, the company was not liable, and the verdict was right and should be upheld.

2. The charge of the court was in accord with the law as above announced. Complaint is made, however, that the judge, in referring to the paper which the company contended its agent called on the plaintiff to produce as evidence of his right to demand delivery of the shipment, alluded to it as "the way-bill or bill of lading." The use of the term "way-bill," the plaintiff in error insists, was calculated to convey to the jury the idea that it was incumbent on the plaintiff to produce a paper which should have accompanied the shipment and should have been in the hands of the carrier, not in the possession of the consignee. The technical meaning of the term is doubtless that indicated by the plaintiff. See 2 Bouv. L. Dic. 1222 ; 30 Am. & Eng. Enc. L. (2d ed.) 440 ; Peixotti v. McLaughlin, 1 Strobh. L. (S. C.) 468, 47 Am. Dec. 563. But we do not think the jury could have been misled as to the meaning of the judge when he undertook to instruct them as to the right of the local agent to demand of the plaintiff the paper evidencing his claim to the shipment. The term "bill of lading" was not the precise technical word by which that paper could be accurately referred to, since, strictly speaking, the term is one to be applied only to the written evidence of a contract for the carriage and delivery of goods sent by sea, though it is now in common use in connection with the affreightment of goods by water other than the sea, or carriage by rail. See 4 Am. & Eng. Enc. L. (2d ed.) 509 ; 5 Cyc. 707; Cyc. L. Dic. 965. "Freight bill" or "freight receipt" was, perhaps, the most technically correct term to employ. Ibid.; Hutch. Car. (2d ed.) § 120. Still, a presiding judge may be accorded some latitude of expression, and it may well be presumed that an intelligent jury understood that which should be perfectly plain to a person of ordinary mental capacity.

Exception is also taken to the following excerpt from the charge of the court: "If you find from the evidence in this case that there was any delay in tendering the goods to the plaintiff, if they were tendered to him by the agent, . . and that this delay was occasioned because the defendant's agent in good faith

had doubt as to whether the plaintiff was the person rightfully entitled to have the goods, . . such delay would not constitute a conversion of the goods, . . and would not render the defendant liable." This and another instruction along the same line are subjected to the criticism that the court, in so charging, "excluded from the consideration of the jury the necessity of a demand for the bill of lading by the agent of the company, and tended to convince them that doubt alone of the identity of the consignee and of his right to receive the goods would free the company from liability, in the absence of the demand." A reference to the full charge of the court, which appears in the record, discloses that these instructions were given to the jury while the judge was charging upon the right of a carrier, acting in good faith, to demand identification of a consignee, and that in another portion of the charge the judge submitted to the jury the question whether or not the agent did, by calling upon the plaintiff to produce the bill of lading, afford him an opportunity of thus identifying himself or showing his right to receive delivery. As the plaintiff did not pretend that he had a bill of lading, it was really not necessary for the company to prove a demand on him to produce it, and the charge given to the jury was as favorable to him as he had any right to expect. It would seem to be as much incumbent upon an unknown consignee to produce of his own volition a bill of lading, if he has one, as it is incumbent on a railway agent to make demand to see the bill of lading before making delivery of freight. Upon the consignee rests the burden of offering proof of his identity and establishing his right to receive the goods consigned to him. The real and controlling issue in the case was whether the agent had no reason for declining to make delivery other than that he did not know the precise amount of the freight charges, and arbitrarily and capriciously refused to accept a deposit which would fully cover the same, or in good faith declined to make delivery for the reason that the consignee was unknown to him and he doubted his right to claim the goods. Whether the agent did or did not demand a production of a bill of lading was unimportant, save as the truth in this regard went to illustrate his good faith in endeavoring to ascertain whether the plaintiff was the proper person to whom to make delivery.

3. The plaintiff in his petition alleged that the company's agent, with full knowledge of plaintiff's right to claim the goods, "wilfully, maliciously, impertinently, and disrespectfully, and without any reason whatever, refused to allow petitioner to have said goods;" and for this alleged wilful breach of the defendant's duty as a common carrier the plaintiff asserted the right to recover punitive damages, in addition to the value of the shipment. On demurrer to certain paragraphs of the plaintiff's petition, the court held that he was not entitled "to recover damages beyond the difference in the value of the goods shipped at the time they should have been delivered and at the time they were offered for delivery by the defendant company." Exception to this ruling was duly taken. Granting it was erroneous, no cause for ordering another trial of the case is made to appear. The plaintiff was afforded full opportunity to establish his alleged cause of action, being restricted in no way in making proof thereof, and the jury has found upon sufficient evidence that he is not entitled to recover in any amount. Had the court ruled that he was entitled to recover punitive as well as actual damages, if he established the alleged breach of duty on the part of the carrier, the result would have been the same, as he failed to satisfy the jury that this was in point of fact true.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*