FRANCIS STANTON *et al. versus* WILLIAM EAGER.

In pursuance of orders from W, of Boston, a quantity of merchandise was shipped at Liverpool by M, for the account of W, on board a general freighting vessel which had been consigned to M, and designated by W for the purpose ; and a bill of lading was obtained by M, by the terms of which the merchandise was deliverable to W. *It seems*, that this was a sale and constructive delivery of the merchandise ; and it was *held*, that M could not, by withholding the bill of lading from W and subsequently enclosing it and the invoice in a letter to his agent, with directions to deliver it to W only upon payment for the merchandise, convert such absolute delivery into a conditional one, or divest W of his property in the merchandise.

In the same case, which was trover against the agent of M, it appeared, that a balance was due from W to M, independently of the cost of the merchandise ; that before the arrival of the vessel in Boston, W became insolvent and assigned his property to the plaintiffs for the benefit of his creditors, stipulating to indorse and deliver the bill of lading of the merchandise to the plaintiffs as soon as he should receive it ; that the bill of lading was received by W after the assignment, and handed by him to the plaintiffs unindorsed, but was indorsed after the commencement of the action ; and that upon the arrival of the vessel in Boston, the defendant, as the agent of M, being also the owner of the vessel, obtained actual possession of the merchandise. It was *held*, that this was a stoppage *in transitu* on the part of M ; and that it was effectual as against the plaintiffs, the assignees of W, although they supposed, when the assignment was made, that at the time of the execution of the orders for the shipment of the merchandise, there was a balance due from M to W.

TROVER to recover damages for the taking and conversion of a quantity of tobacco pipes.

The parties stated a case.

Williams, Putnam & Co., of Boston, in October 1833, wrote to C. Morrall & Son, a house in Liverpool, requesting them to ship the pipes in question to Williams, Putnam & Co. and on their account, by the ship Morea. In compliance with this order, Morrall & Son, on December 4, 1833, shipped the pipes on board the Morea, for the account of Williams, Putnam & Co., and the master signed four bills of lading, in which he agreed to deliver the pipes to Williams, Putnam & Co. or their assigns. Morrall & Son addressed a letter to Williams, Putnam & Co., dated December 7, 1833, in which they stated that they enclosed

an invoice and bill of lading of the pipes " at their debit," but in fact the bill of lading only was enclosed. This letter was retained and afterwards sent under cover of a letter to the defendant, dated December 23, 1833, hereafter mentioned.

On the 21st of the same December, Morrall & Son again wrote to Williams, Putnam & Co., but without mentioning the pipes.

On December 23d, Morrall & Son wrote to the defendant as follows : " In consequence of a very unfriendly letter just received from Messrs. Williams, Putnam & Co., we have withheld the invoice of pipes from them, and now enclose it with the bill of lading, to be delivered up however on their paying you the amount by a bill on England ; but should they decline to receive the pipes on this condition, you will please to sell them on our account, and remit us the proceeds. We have written to Messrs Williams, Putnam & Co. to the above effect. At the same time, it is due to them to mention, that in the course thus adopted, we are solely influenced by the very natural desire of self protection against hostile parties." In a postscript, dated on the 24th, the defendant was requested to insure the pipes, in case Williams, Putnam & Co. had not done so, and to add the cost to the invoice in settling with them. In this letter was enclosed the letter of Morrall & Son to Williams, Putnam & Co., dated December 7, 1833.

It appeared, that in the letter of Williams, Putnam & Co. which was referred to in the above letter, and which was dated November 21, 1833, they stated, that they should hold Morrall & Son responsible for the difference between the net proceeds of the sale of a quantity of cotton consigned by them to Morrall & Son, and its value a short time after such sale, the sale having been made contrary to their orders. The defendant objected to the admission of this letter in evidence.

On January 3, 1834, Williams, Putnam & Co. became insolvent, and assigned their property to the plaintiffs for the benefit of such of their creditors as should, by becoming parties to the indenture of assignment, release their demands. The indenture declared the insolvency of the

assignors, but provided that they should be consulted in the disposition of the property.  The pipes were described in a schedule which was annexed to the assignment and which purported to convey all balances in the hands of divers persons, naming Morrall & Son, subject to all such liens as they might have for advances, &c.  The defendant executed the assignment, as the attorney of Morrall & Son.  The letter of Morrall & Son to Williams, Putnam & Co., dated December 7, 1833, and covering the bill of lading, was handed by the defendant to Williams, Putnam & Co. with a copy of the envelope, on or about February 24, 1834, at which time the pipes had not arrived.  This bill of lading was immediately handed by Williams, Putnam & Co. to the plaintiffs, but was not endorsed until after the commencement of this action.  In the assignment, the assignors covenanted to execute further assurances, and to deliver all documents relating to the property assigned, as soon as they should receive them.

The Morea arrived on or about March 3, 1834, and was entered by the defendant, who was the sole owner and consignee of the ship, and also the agent of Morrall & Son. The pipes were insured by the defendant, and were entered at the custom-house by him, it being agreed that this should be done without prejudice to the rights of the plaintiffs, and were taken to the defendant's store.  The defendant refused to deliver them to the plaintiffs when demanded ; and they were afterwards sold by agreement, without prejudice to the rights of any persons ; but the plaintiffs never paid to the defendant, nor tendered payment of their value.  At that time Williams, Putnam & Co. were indebted to Morrall & Son in a much larger sum than the value of the pipes.

On April 16, 1834, Morrall & Son wrote to the defendant, confirming his doings.

The defendant could prove, if the Court should deem the facts admissible in evidence, that when he handed to Williams, Putnam & Co. the letter of December 7th, he informed them that he should retain the bill of lading and invoice, and should not deliver the pipes until the purchase money was paid ; that he subsequently offered to deliver to them the

Stanton
*v.*
Eager

pipes if they would pay the purchase money, which they agreed to do, but the plaintiffs objected, claiming the pipes as their own by virtue of the assignment and bill of lading ; and that the defendant subsequently wrote to the plaintiffs, saying that he should not deliver the pipes until the amount of the invoice and expenses was paid.   The plaintiffs objected to the admission of these facts in evidence.   If the Court should be of opinion, that the plaintiffs were entitled to recover, judgment was to be rendered in their favor for the value of the pipes at the time of their arrival, with interest , otherwise the defendant was to have judgment for his costs

The case was argued in writing.

*C. G. Loring* and *F. C. Loring*, for the plaintiffs.   The property in the pipes vested in Williams, Putnam & Co. when they were shipped on board the vessel designated by them for that purpose.   A delivery under those circumstances was equivalent to a delivery to their agent.   Long on Sales, 168, 170 ; *Potter v. Lansing*, 1 Johns. R. 215 ; *Dutton v. Solomonson*, 3 Bos. & Pul. 582 ; *Mary & Susan*, 1 Wheat. 25 ; *Vale v. Bayle*, Cowp. 294.   The bargain was then complete ; and Morrall & Son had not even a lien upon this property, except the right of stoppage *in transitu*, in case of the insolvency of Williams, Putnam & Co.   After the pipes were delivered on board the vessel, Morrall & Son had no right to prescribe any conditions as to their delivery to Williams, Putnam & Co.

The property in the pipes passed to the plaintiffs by virtue of the assignment and of the subsequent delivery and indorsement of the bill of lading ; and the indorsees may maintain trover for them.   *Morrison v. Gray*, 2 Bingh. 260 ; *Cuming v. Brown*, 9 East, 506 ; *Howland v. Harris*, 4 Mason, 497 ; *Gardner v. Howland*, 2 Pick. 599 ; *Lempriere v. Pasley*, 2 T. R. 485 ; *Giles v. Nathan*, 5 Taunt. 558 ; *Brown v. Heathcote*, 1 Atk. 160

The right of stoppage *in transitu* did not exist in the present case :

1. Because it arises only in case of *insolvency.*   The order to stop, in pursuance of which the defendant acted, was given *in anticipation of unfriendly feelings*, and not from fear of the insolvency of Williams, Putnam & Co.

2. Because of the state of the accounts between the parties at the time when the bill of lading was signed. It appears by the letter of Williams, Putnam & Co. of November 21, 1833, that they had claims against Morrall & Son for a breach of their orders, as well as for the proceeds of sales, which do not appear to have been adjusted. After that letter was written but before it was received, the pipes were shipped and the bill of lading signed. If Morrall & Son were *then* indebted to Williams, Putnam & Co. in a balance of account, they were divested of all control over the pipes from the moment of the shipment; and if Williams, Putnam & Co. subsequently became indebted to Morrall & Son, that fact would not restore to them such control, nor give them any right to stop *in transitu*. *Vertue* v. *Jewell*, 4 Campb. 31.

3. Because if the right to stop existed as between Williams, Putnam & Co. and Morrall & Son, the intermediate sale to the plaintiffs, who must be considered as *bonâ fide* purchasers for a valuable consideration, divested the right of stoppage. *Might* v. *Campbell*, 4 Burr. 2046 ; *Lickbarrow* v. *Mason*, 2 T. R. 63; *Ludlow* v. *Bowne*, 1 Johns. R. 18; *Stubbs* v. *Lund*, 7 Mass. R. 457 ; 1 Dane's Abr. 445.

At the time of the assignment Williams, Putnam & Co. thought that a large balance was due to them from Morrall & Son, besides the pipes, and so informed the plaintiffs ; and the transfer of the pipes was part of the consideration for the release of their demands, by the plaintiffs and other creditors of Williams, Putnam & Co. If the transaction was in other respects *bonâ fide*, the knowledge, by the plaintiffs, of the insolvency of Williams, Putnam & Co., cannot affect the fairness of the transaction. We admit that, if the plaintiffs knew that Williams, Putnam & Co. were insolvent, that the pipes had not been paid for and probably would not be, and that the assignment was made to divest the consignors of the right to stop *in transitu*, the assignment would have been a fraud on the consignors, and the plaintiffs could not have availed themselves of the bill of lading ; but all the circumstances of the case negative any unfairness on their part. *Cuming* v. *Brown*, 9 East, 506.

*Cooke*, for the defendant, to the point, that the evidence

Stanton
*v.*
Eager

in the present case did not prove that a sale was made by Morrall & Son to Williams, Putnam & Co., but at most a contract for a sale, which was unexecuted by any delivery of the property or of the invoice, either actual or constructive, and therefore did not pass the property, cited *Penniman* v. *Hartshorn*, 13 Mass. R. 87 ; *Ilsley* v. *Stubbs*, 9 Mass. R. 68 ; *Withers* v. *Lyss*, 4 Campb. 237 ; *Busk* v. *Davis*, 2 Maule & Selw. 397 ; *The San Jose Indiano*, 2 Gallison, 294 ; *S. C.* 1 Wheat. 208 ; *The Aurora*, 4 Robinson, 218 ; *The Merrimack*, 8 Cranch, 317 ; to the point, that if it could be considered as a sale, then it was a sale on the condition, that the goods should not be delivered to the purchaser, until the purchase money was paid, and therefore did not vest the title in the purchaser unless the condition was performed, *Van Buskirk* v. *Purinton*, 2 Hall, (New York) 561 ; *Hussey* v. *Thornton*, 4 Mass. R. 405 ; *Marston* v. *Baldwin*, 17 Mass. R. 606 ; *Spring* v. *Coffin*, 10 Mass. R. 31 ; *Bayley* v. *French*, 2 Pick. 586 ; *Whitwell* v. *Vincent*, 4 Pick. 449 ; *Barrett* v. *Pritchard*, 2 Pick. 512 ; that if the plaintiffs claim the alleged balance in the hands of Morrall & Son under the assignment, they must take it subject to the liens, Bac. Abr. *Election, E* ; that where the equities between two claimants are equal, his title shall prevail, who first acquires the actual possession, *Lanfear* v. *Sumner*, 17 Mass. R. 113 ; that there was a stoppage *in transitu* in the present case, and a proper occasion for the exercise of that right, Whitaker on Lien, (New York edit.) 190, 191, 196, 197, 204 ; *Holst* v. *Pownal*, 1 Esp. Rep. 240 ; *Parker* v. *M'Iver*, 1 Desauss. Eq. R. 286 ; *Stubbs* v. *Lund*, 7 Mass. R. 144 ; *Ilsley* v. *Stubbs*, 9 Mass. R. 65 ; *Scholfield* v. *Bell*, 14 Mass. R. 40 ; *Naylor* v. *Dennie*, 8 Pick. 203 ; that the right of an unpaid consignor of merchandise, to stop it *in transitu*, is, in general, prior and paramount to the rights of a purchaser from the consignee, 2 Kent's Comm. 434, 435 ; *Craven* v. *Rider*, 6 Taunt. 434 ; *Vertue* v. *Jewell*, 4 Campb. 31 ; *Newsom* v *Thornton*, 6 East, 40 ; Abbott on Shipping (Story's edit.) 392, 393, 394 ; that such stoppage was valid as against the plaintiffs, they not being *bonâ fide* purchasers without notice

*Cuming* v. *Brown*, 9 East, 514 ; that in England, persons coming in under a purchaser by act of law, as the assignees of a bankrupt, are bound by an equitable lien, although they had no notice of its existence, Sugden on Vendors (6th London edit.) 538 ; Montague on Lien, 77 ; *Lempriere* v. *Pasley*, 2 T. R. 490 ; *Patten* v. *Thompson*, 5 Maule & Selw. 349 ; *Litt* v. *Cowley*, 7 Taunt. 169 ; that the stoppage of the goods in question by the defendant, being confirmed by Morrall & Sons, was as valid as if actually made by them, *Frieze* v. *Wray*, 3 East, 93 ; Whitaker on Lien, 171, 172 ; *Lane* v. *Jackson*, 5 Mass. R. 162 ; *Scholfield* v. *Bell*, 14 Mass. R. 40 ; *Naylor* v. *Dennie*, 8 Pick. 203 ; and that the *actual indorsement* of the bill of lading before the commencement of the action, was essential to the title of the plaintiffs, *Ilsley* v. *Stubbs*, 9 Mass. R. 65 ; *Nix* v. *Olive*, cited in Abbott on Shipping (Story's edit.) 393 ; *Nichols* v. *Clent*, 3 Price, 547 ; *Buffington* v. *Curtis*, 15 Mass. R. 528 ; *Stone* v. *Swift*, 4 Pick. 389 ; 2 Bl. Comm. 468.

SHAW C. J. delivered the opinion of the Court. Both the parties to this suit are creditors, or representatives of the creditors, of an insolvent mercantile house, and the question is, which shall have the benefit of the small amount of merchandise, which is the subject of this action ; and this question depends upon another, which party can establish the better legal title. It seems to have been thought by Williams, Putnam & Co., at the time of their assignment, that Morrall & Son were indebted to them ; yet it is now found as a fact in the case, that at that time a considerable balance, independent of the cost of the pipes, was due to Morrall & Son.

The facts appear sufficiently in the agreed statement, and it will not be necessary to recapitulate them. It was contended, on the part of the defendant, that by the shipment of the pipes in Liverpool, the bill of lading having never been delivered or forwarded to the consignees, but retained by the consignors and forwarded enclosed to their own agent, the property never legally vested in the vendee. But the Court are strongly inclined to the opinion, that the orders

Stanton
v.
Eager.

of Williams, Putnam & Co. to ship the pipes for their account, and the actual shipment of the goods, pursuant to such order, on board of a vessel designated by the vendees for that purpose, and for their account, and obtaining from the master a bill of lading for the goods, making them deliverable to the vendees, constituted a good contract of sale, and a good constructive delivery, so as to vest the property in the goods, in the vendees, and place them at their risk. This conclusion is founded, not upon the supposed specific effect of executing or delivering a bill of lading, or the peculiar character supposed to be attached to a bill of lading as a *quasi* negotiable instrument, but upon the general principle of the common law, applicable to the sale of personal property.

We are to understand, that the Morea was for this purpose a general freighting ship, and the master was acting in regard to goods on freight, as a common carrier ; and this being the case, the fact, if it were so, that the vessel was for some purposes consigned by the defendant, the owner, to the house of Morrall & Son, made no difference in regard to these goods. It then appears that the delivery of the goods on board the vessel was not conditional, and nothing was then done by the consignors, to prevent the general property in the goods from vesting in the consignees. The withholding of the bill of lading, and enclosing it to their own agent to be delivered only in case the vendees should pay for the goods, could not convert the absolute delivery into a conditional one, or divest the property in the goods, which had vested by the delivery of them on board the vessel designated, pursuant to the order of the consignees.

But though by these proceedings the property vested in the consignees, it was subject to the well established right of the vendors, to stop the goods *in transitu*, in case the goods are sold on credit, and the consignees become insolvent ; and this right may be exercised at any time before the goods reach their ultimate destination and come to the possession of the consignees. And the consignors have a right to judge for themselves of the danger of such insolvency, and to take measures to guard against it by stopping the goods *in transitu*.

should the insolvency occur before the goods come to the possession of the consignees. The effect of such stoppage *in transitu* is not to rescind the contract, or to revest the general property in the vendors, but to reinstate them in their lien and right to hold the goods in security for the price.

The consignors might have exercised this right at Liverpool, if they had ground to apprehend the insolvency of the consignees before the arrival of the goods, and such insolvency had occurred accordingly ; and perhaps the change of the destination of the goods, after the shipment, by enclosing the bill of lading to their own agent, with directions not to deliver the goods to the vendee, without receiving payment or security, might amount to such a stoppage. But it is not necessary to consider this point, because the Court are of opinion, that the acts done by the defendant here, under the express authority and direction of the shippers, especially as the defendant was the ship-owner and obtained actual possession of the goods before they could reach the hands of the vendees, or their assignees, was an effectual exercise of the right to stop *in transitu,* if it existed as against the plaintiffs.

And the Court are of opinion, that the plaintiffs, in this respect, stand precisely in the place of the original vendees, and not in the place of *bonâ fide* purchasers, claiming under a bill of lading, without notice of any *lien, set-off,* or adverse claim. The plaintiffs were assignees, with full notice of the insolvency of the assignors. Had there been a balance due on general account from Morrall & Son, to Williams, Putnam & Co., at the time of the execution of the order, as it is said the assignees supposed there was, it would have presented a very different question. In that case, shipping the goods, pursuant to the order of the vendees, and charging them in account, would have been no more than an appropriation of their own funds, according to their own order, and not a sale upon credit, and the right to stop *in transitu* would not have existed. But although the assignees so supposed and believed, and were entirely without any imputation of blame in taking a conveyance of the goods, yet when it turns out, as upon the facts it appears to have done in this case,

that Morrall & Son were already creditors of Williams, Put-nam & Co., that the goods were ordered and put on board ship solely on the personal credit of the vendees, the right to stop *in transitu* is shown to be complete, against the vendees. And that right is equally perfect against all others, except a purchaser taking *bonâ fide*, by indorsement of the bill of lading, in the usual course of trade, without notice of the consignor's right to stop the goods *in transitu*. In the present case these conditions are all wanting. The plaintiffs did not take under an indorsement of the bill of lading, the bill of lading not having been indorsed until after the action was commenced. It is said in answer, that at the time of the assignment, the consignees had not received a bill of lading, but they stipulated to indorse and deliver the bill of lading as soon as they should receive it, and that they did it accordingly. This is all very true, but it does not answer the objec tion. It shows that the insolvent house, in making their assignment for the benefit of creditors, intended to make as good a title as they could make to these goods, with the rest of their property, and entered into stipulations accordingly. But it leaves the case as it was before, that the assignees took as assignees all the interest which the assignors had in the goods, subject to all claims of lien and set-off, and not as indorsees of a bill of lading in the usual course of trade, or as purchasers, advancing money or giving credit upon the faith of such bill of lading. Indeed the consignors had taken effectual care to prevent them from thus transferring the bill of lading by indorsement to a *bonâ fide* purchaser, by enclosing the bill of lading to their own agent, to be delivered to the consignees only on payment made or security given. Nor can the plaintiffs be considered purchasers without notice. No money was paid for the goods, no new credit given, no new dealings had upon the faith of this shipment of goods. The plaintiffs knew that the consignees were insolvent; this is admitted, and indeed the whole proceedings were founded upon that assumption, and they took the conveyance, as that of a party declared to be insolvent; they knew that the con-signors were described as creditors, in the same instrument under which they claimed; they knew that by the general

mercantile law, if these goods had been shipped on credit, the vendors had a right to stop them *in transitu.* This was quite sufficient to put them fully on inquiring, and to bind them to the state of facts, as it should ultimately turn out. The effect is, that they took all the title which the assignors had, and no more ; that is, a title to the goods subject to the right of the vendors to stop the goods *in transitu.* And yet it was highly proper that these goods should be included in the assignment. It might turn out, that there was a balance due from Morrall & Son, and that the goods were not shipped on credit, within the meaning of the rule, or that the consignors would not attempt to exercise their right of stoppage, or might not have an opportunity to do so, or might obtain security for the purchase money in some other way. In any of these cases, these goods would properly have gone into the general fund, provided for the vendees' creditors. But in the events that have happened, it appears, that the vendors had the right of stoppage, and did seasonably and legally exercise it ; that under the circumstances, it was equally available against the assignees as against the original consignees ; and therefore that the plaintiffs, without tendering payment for the price of the goods, could not take them out of the custody of the defendant, rightfully holding them for the consignors.

*Plaintiffs nonsuit.*