## 342. STORY v. BUTT.

1. The Civil Code, § 3092, relating to the right of a tenant for life to emblements, is merely declaratory of the common law.
2. The Civil Code, § 3093, which entitles one who rents from the tenant for life to the land until the end of the year, upon his complying with his contract with the tenant for life, notwithstanding the latter dies during the year, is not of common-law origin, but is manifestly an adaptation, made by the compilers of our code, of the statute of 14 and 15 Vict., c. 25.

(a) Under this section a power is conferred upon the tenant for life to represent the whole estate to the extent of making a rent contract binding to the end of the year in which the death of such tenant for life may occur.

(b) The correlative duty of the undertenant is to comply with his contract with the life-tenant; and if he does so, he is not accountable to the remainderman for any portion of the year's rent, though the life-tenant die before the crops are sown.

Distress warrant, from Marion superior court—Judge Little. December 15, 1906.

Argued May 13,—Decided May 28, 1907.

*D. L. Parmer,* for plaintiff in error.

*W. B. Short, George P. Munro,* contra.

POWELL, J.   Mrs. Eliza Story had a life-estate in certain lands; she rented them to the plaintiff in error, Jesse C. Story, for the year 1905, and took from him, for the rent, a negotiable promissory note; she died February 20, 1905, having previously transferred to another the rent note.   Butt, the defendant in error, was the remainderman, or rather, by purchase, he succeeded to all the rights of a remainderman, and for the purposes of the case may be regarded as such.   In the fall of 1905 Butt demanded payment of the rents of Jesse Story, who refused, having paid them to the holder of his rent note.   Butt sued out a distress warrant and Story defended.   The ground had been plowed at Mrs. Story's death, but the crop had not been planted.   The trial court held, that although Jesse Story was, as undertenant of the life-tenant, entitled to possession of the lands until the end of the year, yet since the life-tenant had died prior to the sowing of the crops, the remainderman was entitled to the rent for the year; and that Butt might maintain the distress warrant against Jesse Story, notwithstanding he had paid the rents to the holder of his rent note. Under the holding of the trial court there was a verdict in favor of Butt; and Story brings error.

1.   Section 3092 of our Civil Code, which declares, "If the life estate be terminated not by act of the tenant, he and his legal representatives shall be entitled to emblements, which are the profits of crops sowed by him during life, whether the plants be annual or perennial," and §3093, which asserts, "If the tenant for life rents the land for the year, and dies, or the estate is otherwise terminated during the year, the tenant shall be entitled to the land

for the term of the year, upon complying with his contract with the tenant for life," are not both of the same origin; the former is merely declaratory of the common law, the latter is statutory in nature, having become law in this State through the adoption of the first code, into which it was inserted by the codifiers as a new proposition. At common law, prior to the statute of 11 Geo. II, c. 19, if the life-tenant died before the rent day, his executor could not recover from the undertenant the rent or any portion thereof; nor could any one else collect it; the undertenant went rent free, and all his interests in the land terminated, except a qualified right of ingress and egress for the protection of his emblements, the right to gather crops already sown; for even the undertenant's rights to this extent were respected. Note the statement of Blackstone as to this right: "A third incident to estates for life relates to the undertenants, or lessees. For they have the same, nay greater indulgencies than the lessors, the original tenants for life. The same; for the law of estovers and emblements with regard to the tenant for life is also law with regard to his undertenant, who represents him and stands in his place: and greater; for in those cases where tenant for life shall not have the emblements, because the estate determines by his own act, the exception shall not reach his lessee, who is a third person." Bl. Com. 123. The right to emblements merely relates to the privilege of gathering crops already sown; and the right to possess the premises is included therein only so far as such possession is necessarily incident to the gathering of such crops. There was no common-law privilege that the undertenant might possess the premises until the end of the year.

2. The uncertainty of the life-tenant's estate, and consequently of the undertenant's dependent term, frequently made the undertenant's condition a precarious one; it also made his lease less valuable. Private ingenuity first found a means to avoid the hardship; so that it became customary for the grantor of a life-estate to give the life-tenant the express power to make leases which should not terminate with the life-estate. Finally, in 1851, Parliament passed the statute of 14 and 15 Vict., c. 25, "That where the lease or tenancy of any farm or lands held by a tenant at rackrent shall determine by the death or cesser of the estate of any landlord entitled for his life, or for any other uncertain in-

terest, instead of claims to emblements, the tenant shall continue to hold and occupy such farm or lands until the expiration of the then current year of his tenancy, and shall then quit, upon the terms of his lease or holding, in the same manner as if such lease or tenancy were then determined by effluxion of time or other lawful means during the continuance of his landlord's estate; and the succeeding landlord or owner shall be entitled to recover and receive of the tenant, in the same manner as his predecessor or such tenant's lessor could have done if he had been living or had continued the landlord or lessor, a fair proportion of the rent for the period which may have elapsed from the day of the death or cesser of the estate of such predecessor or lessor to the time of the tenant so quitting, and the succeeding landlord or owner and the tenant respectively shall, as between themselves and as against each other, be entitled to all the benefits and advantages, and be subject to the terms, conditions, and restrictions to which the preceding landlord or lessor and such tenant respectively would have been entitled and subject in case the lease or tenancy had determined in manner aforesaid at the expiration of such current year." This statute, of course, did not come to us as a part of the laws of England which this State had previously adopted; but its existence and beneficial purposes must have been known to the great lawyers who, ten years after its passage, undertook the compilation of our code; for in that code the spirit of this statute appears in the following language (§2238) : "If a tenant for life hires out a slave, or rents the land for a year, and dies, or the estate is otherwise terminated during the year, the hirer shall be entitled to the slave and the tenant to the land, for the term of the year, upon complying with his contract with the tenant for life." The very words of this section, especially so much thereof as relates to the hiring of slaves, indicates a local and statutory origin. The hand of war wiped from the statute the provision as to slaves, but the remainder of it stands as our present §3093 of the Civil Code. Both the statute of Victoria and our code section make the tenant for life the representative of the entire estate for the purposes of leasing it to the end of the year; the law thus confers the power which formerly a special grant was necessary to create. So that now, when the undertenant secures his rent contract for the year from the life-tenant, his

estate and right of possession is not dependent solely upon the estate of the life-tenant but is also supported by the life-tenant's power as the representative of the whole estate. His correlative statutory obligation is compliance with "his contract with the life-tenant." If his contract with the life-tenant binds him to pay the rent in advance, and he pays it, he has made compliance and can not be required to pay again; or if the life-tenant exact a negotiable promissory note, payment of that note to the legal holder thereof is all that can be required of him. The law having made the life-tenant the agent of the remainderman as well as of himself to make the contract of tenancy for the year, the remainderman must stand or fall by the terms of that contract. The question whether under the statute of 11 Geo. II, c. 19, or any other law, or principle of equity, the remainderman can recover from the estate of the life-tenant all or any portion of the year's rent is not now before us for consideration. We hold—and in this case we can not properly decide more as to the resulting rights of parties—that Jesse Story, having complied with his contract with the life-tenant, was entitled to the possession of the premises to the end of the year, and that he was not additionally liable to the remainderman for the rent. The Supreme Court of Alabama seems to have reached a similar conclusion in the case of Terrell v. Reeves, 103 Ala. 265, 16 So. 55, where it is held: "Where one takes possession of leased lands under a deed from the life-tenant, who, prior to said conveyance, had assigned the rent note for the then current year to a third person, to whom the lessee paid the rent, upon the death of the life-tenant in the same year, such grantee is not liable to the remainderman for the rent of said land during the year in which the said deed was executed."

Those having occasion to pursue the common-law phases of this question further may profitably examine the following cases: Ex parte Smythe, 1 Swan, 337, and cases cited in the footnotes; Hawkins v. Kelly, 8 Ves. Jr. 308, and cit.; Pagett v. Gee, 9 Mod: 482; Rockingham v. Penrice, 1 P. Wms. 177; Jenner v. Morgan, 1 P. Wms. 392; Clun's Case, 10 Ves. 127; Duppa v. Mayo, 1 Saund. 282, and cit.; Plymouth v. Throgmorton, Salk. 65; Price v. Pickett, 21 Ala. 741; Marshall v. Mosely, 21 N. Y. 280.                                    *Judgment reversed.*