## 1239. BUTT *v.* STORY.

1. Under Civil Code, § 3093, an under-tenant who rents land from a life-tenant is entitled to the possession of it until the end of the year, upon his complying with his contract with the life-tenant, notwithstanding the latter dies during the year. If the under-tenant pays the rent for the year to the life-tenant, the payment is good against any claim of the remainderman. If the life-tenant takes a negotiable promissory note for the year's rent and transfers it for value to a third person, this is legally equivalent to payment, so far as the rights between the under-tenant and the remainderman are concerned.

2. If the life-tenant rents out the land for the year and dies without collecting the rent, and without doing anything to which the law would give the effect of a collection of it, the under-tenant is entitled to possess the premises to the end of the year, but he is accountable

to the remainderman for such a proportion of the rent agreed to be paid as the period between the death of the life-tenant and the end of the year bears to the whole year. The taking of a non-negotiable note by the life-tenant, though it be assigned, is not equivalent to collection of the rent.

Appeal, from Marion superior court—Judge Martin. May 23, 1908.

Argued July 17, 1908.—Decided February 9, 1909.

*W. B. Short, George P. Munro,* for plaintiff.

*D. L. Parmer,* for defendant.

POWELL, J. When this case was here before, it appeared, that Mrs. Story had a life-estate in certain lands; that in January, 1905, she rented them to the defendant, her son, Jesse Story, and took for the rent his negotiable promissory note; that she died February 20, 1905, before the crops were sown, but that prior to her death she transferred the rent note to a third person, to whom Jesse Story paid the same in the fall of 1905. It further appeared that on the death of Mrs. Story, Butt, the plaintiff, bought the remainder-estate, and in the fall sued out a distress warrant against Jesse Story for the year's rent. Upon this state of facts we held, that under section 3093 of our Civil Code, which is not declaratory of the common law, but is an adaptation of material portions of the English statute of 14 & 15 Vict., c. 25, the life-tenant was given the power to let the premises to the end of the year in which she might die; that she so far represented the whole estate as that payment to her of the year's rent in advance would preclude the remainderman from collecting rent from the tenant for that year; and that if instead of taking cash for the year's rent she took a negotiable promissory note and transferred it, this had the same legal effect as if the tenant had paid her the rent in cash. See *Story v. Butt,* 2 *Ga. App.* 120 (58 S. E. 388). The case went back for a new trial, and it then appeared that the recital in the record, that the note given by Jesse Story to his mother was negotiable, was a mistake,—that in fact it was not negotiable, though she had in writing assigned it to a third person as collateral security.

This makes a very different case. The code section cited above says that in case the holder of the life-estate dies during the year, "the tenant shall be entitled to the land for the term of the year, upon complying with his contract with the tenant for life." The

question arises, to whom shall the compliance be made? It may be made to the life-tenant in his capacity as representative of the whole estate, if it is made while the life-tenant still lives. This we held when the case was here before, intimating at the same time that the estate of the life-tenant would be accountable to the remainderman for a ratable portion of the year's rent. We also held that the taking of the negotiable note and the transferring of it by the life-tenant was equivalent to payment to the life-tenant. The taking of the non-negotiable note and the assigning of it, however, has no such effect; for the assignee of such a paper holds it subject to all the equities between the parties, whether existent or inchoate at the time of the transfer.

According to the common law, rent was ordinarily an incident to the reversion, and whoever owned the reversion at the time the rent fell due was entitled to the entire sum then due. For an able discussion of this doctrine and a citation of authorities, see English v. Key, 39 Ala. 117. There was an exception to this rule in the case of a life-tenant lessor dying pending the lease. In that case, especially after the enactment of the statute of 11 George II, c. 19, section 15, the representative of the life-tenant was entitled to such a proportion of the year's rent as that part of the year throughout which he continued in life bore to the whole year, and the remainderman was entitled to the balance. This doctrine, by a familiar rule, is to be given application except in so far as it is inconsistent with the code section which was subsequently adopted in this State. Looking at the matter from this standpoint, we hold that except in those cases where the life-tenant has secured the rent from the lessee by collecting it, or by doing some act equivalent in law to collecting it, the remainderman, while he can not repudiate the contract between the life-tenant and the under-tenant, is nevertheless entitled to hold the under-tenant liable to him for such a proportion of the rent reserved as the period between the death of the life-tenant and the end of the year bears to the whole year. The statute of 14 & 15 Vict., c. 25, from which our code section was adapted, seems also to contemplate such a division of the rent between the remainderman and the estate of the life-tenant. Under the undisputed facts appearing in the record, the plaintiff was entitled to recover of the defendant such a proportion of the year's rent as 10-1/3 months bear to the whole

year; that is to say, the value of 31/36 of the 1,000 pounds of cotton.                                                    *Judgment reversed.*