## 3644.   SELL *v.* MOSS & COMPANY.

Where a case has been before this court on an assignment of error as to a
    judgment overruling a motion for a new trial, filed by a plaintiff, to
    set aside a verdict rendered for the defendant, and this judgment has
    been reversed, because, in the opinion of this court, the verdict was con-
    trary to law, for the reason that it was without evidence to support it,
    and on a second trial the evidence is substantially the same as on the
    first trial, and no questions of law are raised other than those passed
    upon at the first trial, it is not error for the trial judge to direct a
    verdict for the plaintiff.

                        DECIDED OCTOBER 2, 1912.

Action for money had and received; from city court of Jeffer-
son—Judge Stark.   July 14, 1911.

*J. A. B. Mahaffey, Shackelford & Shackelford, John J. & Roy
M. Strickland, Little & Powell,* for plaintiff in error.

*T. S. Mell,* contra.

HILL, C. J.  This is the second appearance of this case before
this court.  On the first trial the jury returned a verdict for the
defendant, and on review by this court the verdict was set aside and
a new trial granted on the general grounds.  On the second trial
the presiding judge directed a verdict for the plaintiff.  The
material facts of the case are set out in the opinion heretofore
rendered. *Moss* v. *Sell,* 8 *Ga. App.* 589 (70 S. E. 18).  While
there was no substantial difference in the evidence on the first trial
and that on the second, in order to illustrate the questions now
raised it is necessary to make a brief statement of the facts.

Moss & Co., at Athens, Georgia, bought from L. F. Sell at
Mulberry, Georgia, 50 bales of cotton.  Sell delivered the cotton
to the Gainesville Midland Railroad Company and took therefrom
a bill of lading.  He endorsed this bill of lading, attached to it
a draft for the price of the cotton as agreed on, and deposited the
draft, with the bill of lading attached, in the Bank of Hoschton
on the morning of October 27, 1906, and the bank credited Sell
with the amount of the draft.  On the same day and while the
cotton was still on the platform of the railroad crossing at Sell's
side-track, forty bales were consumed by fire.  On the 29th of
October Sell called Moss & Co. over long-distance telephone and
informed them of the burning of the cotton, and, according to
Moss, stated that he would replace the burned cotton with new
cotton and forward a new bill of lading.  In compliance with this

request Moss & Co., on the day on which the request was made, paid the draft by giving a check for the amount on the Georgia National Bank, which check was paid on the next day, the 30th. On the previous trial the evidence was in some conflict as to whether Moss & Co. paid this draft on the 27th or the 29th of October. On the present trial the evidence indisputably showed that the draft was not paid by Moss & Co. until the 29th and subsequently to the time when they received the telephone message from Sell. Subsequently Sell refused to replace the cotton according to his promise, and also refused to repay the money which Moss & Co. had paid on his draft. The defense which Sell set up on both trials was: (1) that the title to the cotton at the time of the fire was in Moss & Co., as Moss & Co. had paid the draft before the fire occurred; (2) that Moss & Co.'s remedy was by suit against the railroad company, a common carrier; and (3) that Moss & Co. carried insurance which covered the cotton.

On the first trial this court held that the title to the cotton at the time of the fire was in Sell, because the evidence showed that Sell had taken from the carrier a bill of lading covering the cotton, to his own order, and attached it to the draft which he drew on Moss & Co., transmitting the draft and the bill of lading to the bank for collection, this being a declaration on the seller's part that he did not part with the title to the cotton, but retained it until acceptance and payment of the draft; the court so holding in accordance with the well-settled doctrine announced in *Erwin v. Harris,* 87 *Ga.* 333 (13 S. E. 513), and citations. And we further held that under section 4126 of the Civil Code (1910), relating to the title to agricultural products, the cotton remained the property of Sell until paid for. The principal reason now assigned for another trial is that the brief of evidence in the former trial was "either deficient or erroneous," and misled the court, and that the decision of this court was based upon a material mistake of fact; that this mistake was that the record stated that the bill of lading which Sell had taken for the cotton was to his (Sell's) own order, when, instead of this being the fact, the bill of lading itself showed that it was not to his own order, but was made directly to R. L. Moss & Co., as consignees. It is contended that, this being true, it follows that when the cotton was burned, the title was out of Sell and in Moss & Co., and the loss should

fall on them, and not on the plaintiff. The bill of lading is as follows: "Gainesville Midland Railway Co., No. 85, Bill of Lading. Mulberry Station, October 27th, 1906. Received of L. F. Sell fifty bales of cotton marked, numbered, and weighed as below, consigned to R. L. Moss & Co., Athens, Georgia." It will thus be seen that the letter of the bill of lading makes R. L. Moss & Co. the consignees absolutely, without any mention of order or assigns. Sell treated the bill of lading as made to his own order, for he took it to the bank, endorsed it, and attached to it a draft for the price of the cotton, and had the amount of the draft placed to his credit in the Bank of Hoschton. There could not have been any other purpose in doing this than to retain the title to the cotton until payment of the draft. There was no other reason why he should have endorsed the bill of lading. This is also manifest by his subsequent conduct; for when the cotton was consumed, he called Moss & Co. over the telephone and requested them to pay the draft, although the cotton had been burned. This conduct on the part of Sell is a clear recognition not only of his purpose, when he took the bill of lading, to retain the title to the cotton until payment of the draft, but a recognition by him that the title was in him at the time of the fire. But for his promise made to Moss & Co. to replace the cotton which had been consumed, it is certainly clear that Moss & Co. would not have paid the draft. He induced the payment of his draft by his promise to replace the cotton. We think that all these facts clearly show that Sell's intention in shipping the cotton to Moss & Co. was to retain title thereto until payment of his draft. While the general rule is well settled that a delivery of property to a carrier is a delivery to the purchaser, yet it is equally clear that any contemporaneous declaration on the part of the seller of an intention to retain title to the property until it is paid for constitutes an exception to this general rule. We conclude, therefore, that under all these facts, clearly indicating an intention on the part of Sell to retain the title to the cotton until payment of his draft, there is no substantial difference between the facts proved on the second trial and those appearing in the brief of evidence in the record when the case was first here for review, which stated that the bill of lading was to the order of Sell. If this is not true, we think § 4136 of the code, supra, is applicable to the facts

of this case, and that under that statute the title to the cotton remained in Sell until payment for the cotton by Moss & Co.; and the draft was not paid until the 29th of October, and the cotton was consumed on the 27th. *Butler* v. *Georgia & Alabama Ry.,* 119 *Ga.* 959 (47 S. E. 320).

We do not think it necessary to consider any of the other questions raised by this record. The same questions were made in the previous record, and the entire evidence was in substantial accord on both trials, and, as this court held on the first trial that the verdict then rendered for the defendant was without any evidence to support it, and was contrary to law, there was nothing for the trial judge to do in the present instance but to direct a verdict for the plaintiff.                    *Judgment affirmed.*

RUSSELL, J., dissenting. I think the lower court erred in withdrawing the case from the jury and directing the verdict, and (though I have endeavored to do so) I can not persuade myself to concur in the judgment of my colleagues. It must be admitted that the question of Sell's liability to the plaintiff depends entirely upon whether the title to the cotton in question passed from the seller to the buyer prior to the burning. The trial judge could not say that Moss & Co. were entitled, as a matter of law, to have a judgment against Sell for the difference between the amount they paid on Sell's draft and the value of the cotton actually received after the fire, unless there is absolutely no theory upon which any other conclusion can be reached, and unless no other deduction can be drawn, nor other inference from the facts reasonably supported. Since the lower court directed the verdict, a judgment of affirmance in this case does not mean merely that the judgment of the lower court was *authorized;* but it is a solemn adjudication that *no other result is legally possible.* Unless this be true, the numerous rulings of this court upon the exclusive right of the jury in every case to declare the facts (beginning with *Davis* v. *Kirkland,* 1 *Ga. App.* 5, 58 S. E. 209) are impotent and meaningless. It is agreed that the case is controlled by a correct determination of the nature and effect of the bill of lading, and that a proper decision must depend upon the application of the ruling in *Erwin* v. *Harris,* 87 *Ga.* 333 (13 S. E. 513). If, under that decision, Sell, in delivering this cotton to the railroad company, had taken a bill of lading to his own order, or had taken

it otherwise than to Moss & Co., delivery to the carrier would not have been delivery to Moss & Co., and the title would not have passed to Moss & Co., until they became owners· of the bill of lading. On the other hand, if Sell, in delivering the cotton to the carrier, took a bill of lading consigning the shipment to Moss & Co. without any reservation, neither the retention of the bill of lading nor a third person's possession of that paper would defeat Moss & Co.'s right to the possession of the shipment, or their title under such possession. See *Central R. Co.* v. *Willingham,* 8 *Ga. App.* 818 (70 S. E. 199).

From an examination of the record in this case, it is perfectly clear to me that Sell did not take (and the railroad did not issue) an "order notify" bill of lading, and thereby retain title in himself to the cotton; and, therefore, having delivered the cotton to the railroad under a bill of lading which bound them to deliver it to Moss & Co., the intention of the parties is at least issuable, even if every circumstance as to what subsequently transpired is taken into consideration. It appears, from the record, that the bill of lading in the present case is a standard bill of lading and not one of the forms used in "order notify" shipments, and that the shipment was consigned to Moss & Co. The usual and well-known custom in preparing bills of lading for "order notify" shipments is for the goods to be consigned to the shipper himself, or to some third person, with a notation to *notify* the real or would-be purchaser. When this case was previously before this court the decision was predicated entirely upon the idea that the transaction turned upon what is ordinarily known as an "order notify" bill of lading with a draft attached, and the first headnote shows that this was the only point upon which the judgment was reversed. The statements in the opinion (page 590, near the top), that "Sell took the bill of lading *issued to his order,* attached it to the draft," etc., and (near the bottom of the same page)' that "Sell, in taking the bill of lading to himself," etc., and (at the top of page 591), that "it is well settled that when the seller of personal property takes from the carrier a bill of lading therefor *to his own order,* and attaches it," etc., "this is a declaration on the part of the seller that he does not part with the title," all show that the court was dealing with the case upon the assumption that it had before it an "order notify" shipment. This impression was created by the

fact that upon the argument of the case it seemed to be agreed by counsel that the bill of lading in effect conformed to the requirements of an "*order notify*" bill of lading.   In looking into the record now it is plain that such is not the case, and the only circumstance which could give rise to such construction is the fact that Sell (unnecessarily, so far as appears) endorsed the bill of lading, by writing his name across the back of it.   This act seems to have been entirely unnecessary, because the shipment of cotton was consigned to "R. L. Moss & Co.," and they would have been entitled to the possession of the cotton upon its arrival at destination, regardless of whether the draft—which Sell procured to be cashed at the Hoschton Bank—had been paid or not.   It certainly did not effect a retention of title in Sell, or, in my opinion, necessarily evidence an intention to that effect upon Sell's part.   It does not appear what Sell's reasons were for endorsing the bill of lading, but as the shipment was plainly consigned to "R. L. Moss & Co.," and no person was named to be notified, a jury would have had just as much right to infer that Sell placed his name on the back of the bill of lading as a guarantee or pledge of good faith, to aid him in getting his draft immediately cashed by the Hoschton Bank, as that it was intended as an attempt to retain title, which must have been fruitless, as the shipment was consigned to Moss & Co. without any limitation or qualification.   And if it be asked what was the object of Sell's attaching the bill of lading to his draft if it was not to retain title, it seems to me that the pertinent reply is that the very terms of the bill of lading would authorize a jury to infer that this was done not to retain title, but as evidence to Moss & Co. that he had complied with a condition precedent to the payment of the draft,—viz., the delivery of the cotton to the carrier.

According to the testimony, Moss agreed to buy Sell's cotton, and to pay him so much for it, and impliedly ordered him to ship it.   This was equivalent to saying, "deliver the cotton to the railroad company (which the law construes in such cases to be my agent), and when you do, I will honor your draft for you."   It is settled that the retention of a bill of lading by the seller, or his sending it to an agent to collect the price, does not prevent title from passing to the buyer upon delivery to the carrier.   Stanton *v.* Eager, 33 Mass. (16 Pick.) 467.

In my view of the evidence, there is also conflict (even if it be admitted that Sell is indebted to Moss & Co. in some amount) as to the amount of the indebtedness; and for this reason, also, the direction of a verdict was error.

So far as the prior decision in this case is concerned, this court is bound by any proposition of law involved and decided in the former case, but the rule stare decisis is not affected by the correction of mistakes of fact. There has happened in this case just what occurred in this court in *Story* v. *Butt,* 2 *Ga. App.* 119 (58 S. E. 388). When the case was before the court the first time, it was argued and decided upon the assumption that Jesse C. Story had given a "negotiable promissory note" for the rent, and on that theory the judgment of the court below was reversed. When the case came back to the court again (5 *Ga. App.* 540, 63 S. E. 658), attention was called to the fact that the recital in the former record and former opinion in the case, that the note given by Jesse C. Story to his mother was "negotiable," was a mistake, and that in fact it was not negotiable. In consequence of the discovery of this mistake, the judgment was reversed again (as it should have been), because the question as to whether the note was negotiable or not negotiable was such an important factor in the case as to absolutely determine it one way or the other. So, in this case, the question as to whether Sell took the bill of lading to his own order, or merely delivered the cotton to the carrier and took a bill of lading naming Moss & Co. as consignees, is the absolutely controlling point; for, unless Sell took the bill of lading to his own order, delivery to the carrier was delivery to Moss & Co.

So far as the opinion of the majority refers to the provisions of § 4126 of the Civil Code, this view of the case is, in my opinion, unimportant, and a decision can not be affected by it, because the proviso of the code section expressly declares that "in cases where the whole or any part of the property has been delivered to the buyer, the right of the seller to collect the purchase-money shall not be affected by its subsequent loss or destruction." Consequently, if Sell's delivery to the carrier was delivery to Moss & Co., he would be entitled to retain the entire amount of the draft which represented the purchase-price of the cotton.

In my opinion the trial judge erred in directing the verdict.