4328.  MOORE *v.* THE STATE.

1. One may "make way with or dispose of" cotton or other products, within the meaning of section 551 of the Penal Code of 1910, by means of constructive delivery such as may be made by transfer of a bill of lading symbolic of such products.  And where one who has bought for cash certain cotton fails to pay for it and contracts to sell it to a third person, and delivers it to a carrier in one county, consigned to his own order, to be shipped into another county, and attaches the bill of lading to a draft for the purchase-price, drawn by him upon that person and payable to a bank in the latter county, in which county the draft is paid to the bank and the bill of lading delivered to the drawee, the person thus disposing of the cotton can be prosecuted under this section of the Penal Code in the latter county.

2. Since different essential elements are necessary to constitute the offenses defined by sections 551 and 553 of the Penal Code, it is immaterial, in a prosecution for a violation of section 551, that the accused, by having given worthless drafts in payment for the same products, may also have committed the offense denounced in section 553.

3. The trial was free from material error.  The evidence authorized the conviction of the accused, and there was no error in refusing a new trial.

                    DECIDED APRIL 16, 1913.

Indictment for felony; from Crisp superior court—Judge Little-john.  June 18, 1912.

   *H. J. Quincey, J. T. Hill, J. W. Dennard, A. J. McDonald, J. B. Hutcheson,* for plaintiff in error.

   *Max E. Land, solicitor-general, Crum & Jones,* contra.

RUSSELL, J. , The plaintiff in error was convicted of a violation of section 551 of the Penal Code. The indictment charged that the accused, being engaged in the business of buying cotton, bought for cash, from Thrasher & Thrasher, a firm of cotton planters, 29 bales of cotton, identified by specified numbers, and one unnumbered bale, and that, with intent to defraud Thrasher & Thrasher, he failed and refused to pay for the cotton, and made away with it and sold it to W. W. Espy, trading under the name of W. W. Espy Cotton Co. The reasons most strongly urged for a reversal of the judgment refusing a new trial were: (1) that if the defendant was guilty of any offense, the crime was committed in the county of Turner, and not in Crisp county; and (2) that the defendant, if guilty, is guilty of a violation of section 553 of the Penal Code, and not of section 551. The remaining assignments of error are clearly subsidiary to these two main contentions (which for convenience we will treat together), or are not of sufficient materiality to have prejudiced the accused or affected the verdict against him. In our consideration and analysis of the evidence we must give the same preference to the testimony in behalf of the prosecution which the jury accorded that evidence. According to the testimony for the State, Thrasher & Thrasher were a partnership of planters, producing cotton. They raised and ginned the cotton described in the indictment. They sold it on a cash basis to the defendant, taking his drafts in payment. The defendant having, before he gave the drafts, drawn out every dollar he was entitled to draw from the bank on which they were drawn, they were returned dishonored, and, according to the testimony, the farmers who produced the cotton have never received one cent of the purchase-price. It is clear, according to this testimony, that the accused could have been indicted under the terms of section 553, for giving worthless drafts; but the offense denounced in that section is a mere misdemeanor, and the real question is not whether the accused could have been indicted for a misdemeanor, but rather whether he could be indicted for and legally convicted of the felony denounced in section 551. As was pointed out in *Whitaker* v. *State*, 9 *Ga. App.* 213 (75 S. E. 258), the common essential element necessary to constitute a crime under both sections 551 and 553 is loss resulting to the seller of certain designated products by reason of the purchaser's wrongful failure to pay for

37

the same. We pointed out also in that case some of the distinguishing characteristics and variant elements which differentiate the offenses defined in these sections, but we held that a trial for a violation of either section would be a bar to a prosecution under the other section, where it was apparent that both cases involved exactly the same transaction. This holding was necessary because in this State the merits of a plea of former jeopardy are determined by what is known as the "same-transaction test." If the transaction for which one has been tried is the identical transaction for which he is again prosecuted, a plea of former jeopardy is available, no matter how the designation of the charge may be varied.

Omitting for the moment the question as to the jurisdiction (which is, of course, paramount in the consideration of the instant writ of error), it will be readily seen, from reading the opinion in the *Whitaker* case, supra, that while, as was there said (p. 216), the purpose of both sections, 551 and 553, is to protect producers and dealers in farm products from loss, and the gravamen of the offense defined in each section is loss to the seller, and if the loss results by reason of the fact that the sale was for cash and that the purchaser made away with or disposed of the product before he paid for it, the case would fall under section 551, and if the loss resulted from the fact that the buyer's check was worthless, and payment was refused when it was presented for payment, then the case would fall under section 553, it was not intended to be held, and can not be held, that one clearly guilty under the provisions of section 551 can not be punished therefor, because, under the evidence, he might also be properly convicted under the provisions of section 553. According to the evidence for the State in this case, the accused was plainly guilty of giving worthless drafts in payment for the cotton. He could have been indicted for, and, under the testimony, could properly have been convicted of, a violation of section 553. But the State is not compelled to prosecute for a misdemeanor, if there be present in the criminal transaction all of the essential ingredients which plainly evidence the commission of a felony. On the contrary, the interests of society require that the law should be directed to the punishment of the felony, rather than to prosecution for misdemeanor.

If the testimony for the State be true, the accused committed a misdemeanor in Turner county, by there giving the sellers of the

cotton worthless drafts in payment for it. Nevertheless the plaintiff in error was clearly guilty of the felony defined in section 551 of the Penal Code, if, with an intention to defraud the sellers, he made away with or disposed of the thirty bales of cotton which he had purchased from the planters for cash, and never paid them for the cotton; and if the evidence is sufficient to establish those essential characteristics which must enter into the commission of the offense defined in section 551 (and some of which differentiate and distinguish that offense from the misdemeanor punishable under the provisions of section 553), the question would then arise as to whether the offense was committed in Turner county or in Crisp.

We may say in passing that as to section 551 it is entirely immaterial whether the accused gave drafts to the planters or not, for such a draft is not payment until it is paid, and it will be noted that the provisions of section 551 are limited to purchases from planters or commission merchants, whereas, under the provisions of section 553, it is a misdemeanor to give a worthless check or draft by which the seller sustains loss, whether the seller be a planter or commission merchant, or whatever be his vocation.

According to the evidence in this case, Moore, the defendant, after purchasing the cotton from Thrasher & Thrasher, for cash, telephoned to a representative of Espy at Cordele, and negotiated with Espy a sale of this identical cotton, and obtained Espy's permission to attach to the bill of lading for the cotton a draft on Espy for its value, according to their agreement, which Espy promised to pay upon presentation, and Moore made the draft and attached it to a bill of lading issued to himself as consignee, and payable to a bank in Cordele, Crisp county, and the draft was paid by Espy when it was presented at the bank in Cordele. We think this proof shows that the defendant made away with and disposed of the cotton, within the terms of the statute; and if this be true it is plain that under the ruling of the Supreme Court in *Erwin* v. *Harris,* 87 *Ga.* 333 (13 S. E. 513), the sale (and consequent disposition of the cotton) was effected in Crisp county, and not in Turner. There is nothing in the argument that there is no proof that it was the intention of the parties to sell the cotton in Crisp county, and that there is no proof that the cotton was in fact delivered in Crisp county in pursuance of the transaction to which

we have just referred. It is true the transfer or assignment of the bill of lading was of itself insufficient to convey title to the lot of cotton until the draft was paid. Until the draft was paid the defendant had the right to stop the shipment in transitu, and at any time prior to its payment he could have instructed the bank not to present the draft, and not to deliver his bill of lading; but the moment that Espy paid the draft at the Cordele bank, the title of Moore passed to Espy, and there in Crisp county, through his agent, the bank, Moore disposed of the cotton which he had purchased on a cash sale, and, as appears from his subsequent failure to pay the sellers, effectually made away with their property. It makes no difference that at the time the draft was paid the cotton was still in Turner county, in a car on which it had been loaded. When Moore, through his agent in Crisp county, delivered to Espy the bill of lading, which was symbolic of the cotton, the delivery, so far as Espy's rights were concerned, was just as effectual as if there had been a physical, manual delivery in front of the bank door in Cordele of each single separate bale which had been received by the railroad company. Under the ruling in the *Erwin* case, supra, the law implies that it was the intention of both parties that the delivery necessary to complete the sale should be at Cordele. See *Sell* v. *Moss,* 11 *Ga. App.* 857-8 (75 S. E. 985) ; *Florida Central & Peninsular R. Co.* v. *Berry,* 116 *Ga.* 20 (42 S. E. 371). While the accused may be guilty of a violation of section 553, and the venue as to this would have to be laid in Turner county, if he be guilty of a violation of section 551 no court has jurisdiction, under the facts of this case, except the superior court of Crisp county; for "when a bill of lading is attached to a draft drawn on a third person, it will be treated as security for the draft, and neither title to the goods, nor right to the bill of lading, will pass to the drawee until, as required therein, he accepts, or accepts and secures, or pays the draft, as the case may be" (Civil Code, § 4134; *Southern Railway Co.* v. *Strozier,* 10 *Ga. App.* 157, 73 S. E. 42) ; and therefore Moore had neither disposed of nor made away with the cotton of the prosecutors until his intended delivery became accomplished by Espy's payment of the draft at Cordele, Crisp county. The rulings of the Supreme Court are uniform to the effect that where title is reserved by the seller, in a bill of lading, taken in his name, such title passes only upon payment of the draft

attached thereto and at the place of payment of the draft, the purpose and effect of such a transaction being to use the draft as security for the retention of title until the payment of the draft. In other words, the situs of the sale is at the place where the delivery of the draft is made to the purchaser. The sale is finally completed by the delivery, and at the place of the delivery, of the bill of lading which symbolizes the property consigned.

The point is made that the proof of execution of the bill of lading is insufficient, but we can not concur in this contention, for the testimony of Joe Espy Jr. in regard to the negotiations over the telephone, as well as the positive testimony of Mr. Thurmond as to the genuineness of Moore's signature to the draft, prima facie at least, estopped the defendant from denying the genuineness of the bill of lading which was received by Espy attached to the draft, which the defendant said he would send in this manner. The circumstances were sufficient to authorize the conclusion that Moore attached the bill of lading to his draft, proved to be genuine, and forwarded it to the bank. It was a paper being presented by Moore himself, and he thereby in such a sense vouched for the genuineness of the bill of lading that it was immaterial, in the pending investigation, whether what purported to be the signature of the agent of the railroad company thereto was genuine or not. *Whitaker* v. *State,* supra.

It is insisted that in the event this court should hold that the superior court of Crisp county has jurisdiction of the instant case, by reason of the fact that the delivery of the draft with bill of lading (representative of the cotton) attached was in that county, the State of Georgia will be deprived of the power of dealing with any violation of section 551 in which there is a similar delivery of farm products beyond the limits of the State; in other words, that if a party who has purchased cotton or other products of the farm, for cash, ships the cotton out of the State upon his draft and bill of lading, and the draft is paid outside the State, then there could not be a prosecution in Georgia for such an offense. We are not at this time called upon to rule upon such a case, but the fact that there is a possibility that some guilty man may in future escape is no reason why another, who has been legally convicted, should not be punished. Furthermore, without deciding any question in advance of its presentation in the appropriate way,

it would seem to us that it could safely be held that where one had bought another's farm produce for cash, and, intending to defraud the seller, and without paying a cent of the purchase-price, shipped the seller's products beyond the limits of the State, the buyer could very well be said to have "made away with it," and, the fact appearing that he had removed the products beyond the jurisdiction of the State, it would be wholly immaterial whether the delivery had been made by means of bill of lading and draft attached or without either. The placing of property where it can not be reached by any of the processes of a sovereign State would be a rather aggravated case of "making away" with that property, according to the meaning of that term as it is ordinarily used in common parlance.

What we have already said disposes of the assignment of error contained in the second ground of the amended motion for a new trial, and constrains us to hold that the court did not err in the instruction of which complaint is made. While consent of parties is so essential to a valid sale that there can not be a sale unless both parties so intend, still there may be a sale where there is a dispute as to the place where delivery is to be made; and, so far as the point here involved is concerned, the intention as to the place of delivery is determined, as a matter of law, from the act of the seller in retaining title to himself in the bill of lading until payment of the draft attached, and the act of the purchaser in paying the draft and taking to himself the bill of lading, just as, in cases arising under sections 551 and 553 of the Penal Code, the intent to injure and defraud is conclusively presumed from the facts. *Whitaker* v. *State,* supra.

What we have said upon the subject of venue practically disposes of all the exceptions to the charge of the court, except those assignments of error in which the plaintiff in error insists that if he was guilty at all, he was guilty of a violation of section 553, and that this offense, if committed, was committed in Turner county, and complains of the refusal of the court to give in charge to the jury various requests directing the attention of the jury to the provisions of section 553 in reference to the giving of worthless checks. These exceptions, too, have been sufficiently dealt with, and we need only state, in addition to what we have already said, that though the accused may be guilty of a violation of section 553, the State,

by proof of all facts necessary to constitute the offense defined in section 551, established the fact that he was guilty of a violation of section 551.

The evidence upon every material point was sufficient to authorize the verdict of the jury, and there was no error in refusing a new trial.　　　　　　　　　　　　　　　　　*Judgment affirmed.*