## ERWIN *v.* HARRIS.

1. The evidence introduced by the defendant himself showing that the contract and the terms of it were in writing, by means of correspondence, the defence that the contract was void for the want of writing is overcome by the proof.
2. A contract for the sale of five car-loads of oats at a stipulated price per bushel, f. o. b. cars at a given point, does not contemplate that delivery on the cars to the carrier at that point should be a delivery to the purchaser, where the seller takes the bill of lading to his own order and attaches it to a draft drawn on the buyer, transmitting the draft and bill of lading to a banker of the city of the buyer's residence.  Under such circumstances, the fair inference would be that both parties contemplated delivery at such city and payment of the price upon delivery.
3. The sale being made by sample, the buyer was entitled to inspect the oats before paying the draft drawn for the price.  And where the shipment embraced two car-loads only, and the buyer refused to pay the draft covering the price of these upon the ground that the cars had not arrived and he had no opportunity to inspect, and thereupon the banker caused the draft to be protested for non-payment, this did not justify the seller in not sending forward the other three cars according to contract.

4. A subsequent purchase of the same two car-loads of oats by the same purchaser from the broker of the seller, after the seller had declined to forward the other three car-loads, was no waiver of the right of action for a breach of contract in failing or refusing to forward them.

5. The contract contemplating delivery by the seller to the buyer at the city of the latter's residence, the measure of damages for failing to deliver the three car-loads was the difference between the stipulated price and the market price at that city when the delivery ought to have been made less the freight.

July 8, 1891. By two Justices. Argued at the last term.

Statute of frauds. Contracts. Sales. Delivery. Measure of damages. Before W. D. NOTTINGHAM, judge *pro hac vice*. City court of Macon. June term, 1890.

Reported in the decision.

S. A. REID, for plaintiff in error.

M. W. HARRIS, *contra*.

SIMMONS, Justice.

1. Erwin, the plaintiff in error, pleaded, among other things, the statute of frauds. One of his assignments of error in the motion for a new trial was, that the verdict was in favor of Harris and contrary to the charge of the court, the court having charged in substance that if the buyer bought of the defendants the five car-loads of oats "f. o. b." at twenty-one cents, the contract would be void under the statute of frauds if the oats were worth more than $50 and the contract was not in writing, and if the buyer had accepted none of the goods nor given anything in earnest to bind the bargain or in payment. The testimony of Erwin, the defendant in the court below and plaintiff in error here, shows that there was a correspondence between him and Harris by mail and by telegraph, the letters and telegrams showing the price of the oats and the terms of the contract agreed upon. This evidence of the plaintiff in error shows that the contract was in writing and was not void because in violation of the statute of frauds.

2. Erwin wrote Harris from Pilot Point, Texas, that he had five car-loads of oats which he wished to sell, and sent Harris a sample, naming his price for the oats. Harris telegraphed him that he would take five car-loads at twenty-one cents per bushel, like the sample sent, free on board cars at Pilot Point. This offer was accepted by Erwin by telegram. Erwin shipped promptly two car-loads of the oats, sending drafts with the bill of lading attached. The oats were consigned to Harris, at Macon, Georgia, and the bill of lading attached to the drafts was taken by Erwin to his own order, and sent by him to a bank in Macon. The bank presented the draft to Harris, and he refused to pay, on the ground that he had a right to inspect the oats before paying, and on the trial urged the further ground that he had purchased five car-loads and Erwin had only sent two. It was contended by counsel for the plaintiff in error that when Harris made the offer of twenty-one cents and it was accepted by Erwin in Texas, and Erwin placed the two car-loads of oats free on board the cars, that amounted to a delivery of the oats to Harris in Texas. The general rule is that when one orders goods from a distant place to be shipped by a common carrier, and the order is accepted and the goods shipped, the delivery to the common carrier is a delivery to the purchaser, the common carrier being the agent of the purchaser to receive them ; and when this is done, the title, without more, passes from the vendor to the vendee. If, however, the vendor of the goods is not satisfied of the solvency of the purchaser, or is doubtful thereof, or wishes to retain the title in himself, he may vary this rule, when he makes the consignment and delivers the goods to the carrier, by taking a bill of lading from the carrier to his own order. When the vendor does this, it is evidence that he does not part with the title of the goods shipped, but retains the same until the draft which he

sends with the bill of lading is accepted or paid ; and when the title is thus reserved in the vendor or consignor, the carrier is his agent and not the agent of the consignee, and the risk is the consignor's and not the consignee's. Erwin, the consignor, having taken the bill of lading to his own order and attached it to the drafts drawn on Harris, and sent them to the bank in Macon, Georgia, delivery to the carrier in Texas was not a delivery to Harris. Under these facts the title remained in Erwin, the consignor, and the delivery to Harris was contemplated to be at his residence in Macon, payment of the price to be made by him there on delivery. See Bennett's Benj. Sales (1888), §381 ; 2 Schouler Pers. Prop. §391 ; Blackb. Sales (2 Eng. ed.), 162 ; Newmark Sales, §147 *et seq.;* Dows *v.* National Bank, 91 U. S. 618 ; Marine Bank *v.* Wright, 48 N. Y. 1 ; Bank *v.* Jones, 4 N. Y. 497; Farmers' Nat. Bank *v.* Logan, 74 N. Y. 568 ; Merchants' Bank *v.* Bangs, 102 Mass. 291 ; National Bank *v.* Crocker, 111 Mass. 163 ; National Bank *v.* Dearborn, 115 Mass. 219.

3. The court charged the jury, in substance, that if the oats were sold by sample, the buyer had a right to examine and inspect them in bulk before paying for them, and the denial of this right would be a reason for nonpayment of the draft ; that the contract sued on was an entire contract, and that if they found that Erwin did ship two of the five cars of oats, and demanded pay for the two cars as soon as shipped, and the buyer refused payment, he had a right to refuse, and his refusal did not excuse the shipper from sending the balance. There was no error in either of the propositions submitted to the jury in this charge. Where a vendor sells goods by sample and draws a draft on the vendee for the purchase price thereof, the vendee certainly has a right, before paying the draft, to inspect the bulk of the goods purchased. When goods are sold by sample, there is

an implied warranty on the part of the seller that the bulk of the goods will come up to the standard of the sample. It was contended by counsel for the plaintiff in error that although there might be an implied warranty that the goods were equal to the sample, still Harris should have paid the drafts, and if the oats when they arrived did not equal the sample which had been sent to him, he could sue Erwin for breach of warranty. Harris might have done this if Erwin had lived in the same county or State, but as Erwin resided in the distant State of Texas, a suit against him there would have cost more perhaps than the difference would have amounted to between the price of oats of the grade contained in the sample and the price of inferior oats in bulk. The better rule and practice is to allow the purchaser to inspect the bulk before requiring him to pay. On the right of the purchaser to inspect before payment, see 2 Schouler Pers. Prop. §406; Newmark Sales, §260; Bennett's Benj. Sales, §699.

The second proposition contained in this extract from the charge, in our opinion, was also sound. The contract for the purchase of the oats was entire. Harris had a right to insist that all the five cars should be delivered to him and be inspected by him before he paid for any of them. He purchased five cars, and Erwin agreed to sell and deliver him five cars at his place of residence, as we have heretofore shown. Erwin therefore had no right to deliver two cars at a time and draw drafts on Harris for the purchase price. When, therefore, he delivered or proposed to deliver a quantity less than he sold, Harris had a right to refuse it. There is no indication in the record that any specified quantity was to be delivered in car-loads from time to time. Nor was there any proof that there was a general custom of the trade authorizing Erwin to deliver at different times a less quantity than the entire contract called for, and

v 87-22

draw drafts for the same before his contract was com-pleted. See Benj. Sales (Bennett's), §690; Newmark Sales, §235 *et seq.*; 2 Schouler Pers. Prop. §388.

The case of *Branch* v. *Palmer*, 65 *Ga.* 210, was re-lied on by counsel for plaintiff in error; but, while this court there held that the contract was an entire one, that case is different in its facts from this. The facts of that case show that Palmer was to purchase 600 bales of cotton for Branch, to be delivered in different lots and at different times; and that the custom of the trade was that he had a right to draw for the amount due on each lot as it was shipped. This court held, upon these facts, that when Branch refused to pay the drafts thus drawn, Palmer was not bound to carry out and complete the contract. A contract may be an en-tire one and yet contain stipulations for a delivery by instalments, as in the contract between Branch and Palmer; but in the contract under consideration, as we have before remarked, there was no understanding or agreement that the five cars were to be delivered by in-stalments, nor was there any custom proved which would authorize Erwin to draw on Harris before the completion of the entire contract. The court was right, therefore, in instructing the jury that the refusal of Harris to pay for the two cars of oats did not relieve Erwin from sending the other three cars.

4. After Harris had refused to accept or pay the draft drawn for the two car-loads of oats and Erwin had de-clined to forward the other three car-loads and had turned over the two car-loads to a broker to be sold on his account, Harris purchased these oats from the bro-ker. It was contended by counsel for the plaintiff in error that when he purchased the identical car-loads of oats from Erwin's broker, he waived his right of action for a breach of the contract in failing to forward the other three cars. We do not think Harris waived his

right of action by purchasing the two car-loads from the broker. The broker had them for sale, and Harris had the same right to purchase them that any one else had. The contract was abrogated by the failure of Erwin to perform his part of it. There was no reason to forbid Harris from going into the market and purchasing the oats.

5. The court charged the jury in substance, as to the measure of damages, that if they found for the plaintiff, they could find the difference between the price contracted for and the market value at the time of the failure of the defendant to ship the oats. Counsel for the plaintiff in error contended that if Harris was entitled to recover, he would only be entitled to recover the difference between the cost of the oats in Texas when the contract was made, and the price at the same point when Erwin refused to deliver them, because, he claimed, the point of delivery was in Texas. We have shown in the former part of this opinion that the point of delivery under this contract was not in Texas, but in Georgia, and therefore the measure of damages for failure to deliver the three car-loads was the difference between the stipulated price, and the market price in Macon when delivery ought to have been made less the freight. *Judgment affirmed.*