## 2755.   MOSS & COMPANY *v.* SELL.

1. Where the seller of personal property delivers the property to a carrier, consigned to the buyer, and takes from the carrier a bill of lading to his own order, and attaches it to a draft drawn on the buyer, transmitting the draft and bill of lading through the bank to the buyer's residence or place of business, the seller thereby expresses his intention not to part with the title to the goods shipped to the buyer, until his draft attached to the bill of lading is accepted and paid.

2. The verdict for the defendant was without any evidence to support it, and was contrary to law, and a new trial should have been granted.

DECIDED JANUARY 24, 1911.

Action for money had and received; from city court of Jefferson —Judge Stark. May 3, 1910.

*T. S. Mell*, for plaintiffs. *J. A. B. Mahaffey, Shackelford & Shackelford, John J. Strickland*, for defendant.

HILL, C. J. R. L. Moss & Company brought suit against Sell, alleging, in substance, that they bought fifty bales of cotton from him; that he delivered the cotton to the Gainesville Midland Railway, taking a bill of lading therefor, which he attached to a draft on Moss & Co. for the price of the cotton, and deposited the draft, with the bill of lading, in the bank at Hoschton, Georgia, on October 27, receiving credit from the bank for the full amount of the draft. On the 27th all the cotton except 10 bales was consumed by fire while on the railroad platform at what was known as "Sell's siding." On the 29th Sell called up Moss & Co., over the telephone, informed them of the burning of the cotton, and stated to them that he had released the railroad company from liability therefor, as the railroad company had refused to give him a bill of lading for the cotton on the siding without such release. He asked Moss & Co. to pay his draft and return the bill of lading to him, and told them that he would replace the cotton burned with new cotton, and forward a new bill of lading. Moss & Co. complied with this request, but Sell refused to replace the cotton or return the money they had advanced to him by the payment of his draft. The defense relied upon by Sell was, that the cotton was delivered to Moss & Co. when it was delivered to the railroad company on the platform, and that the draft which he had drawn on Moss & Co. for the cotton was paid by them before the cotton was burned,—in other words, that the cotton at the time of the burning belonged to Moss & Co., and not to him. The jury rendered a verdict in favor of the defendant; the plaintiffs' motion for a new trial, based upon the usual formal grounds and upon the ground of newly discovered evidence, was overruled, and they bring error.

The material facts are not in dispute, and they support the allegations made in the petition. These undisputed facts are, that the cotton was sold by Sell to Moss & Co. and delivered to the railroad company on its platform, Sell covenanting with the rail-

road company that on condition that it would issue him a bill of lading for the cotton on its platform, he would relieve it from any loss by fire. Sell took the bill of lading issued to his order, attached it to a draft for the amount of the price of the cotton, drawn on Moss & Co., at Athens, Ga., and deposited it in the bank at Hoschton. This was on October 27. The cotton was burned on that day, and the draft was paid by Moss & Co., by a check on the bank at Athens, on Monday, October 29. Sell notified Moss & Co. that the cotton had been burned, but asked them to pay the draft which he had drawn on them for the purchase price of the cotton, and promised that if they would do so, he would replace the consumed cotton. Moss & Co. paid the draft, relying upon this promise, which Sell refused to keep.

We think that under the undisputed facts, a verdict was demanded for the plaintiffs. While the general rule is that when one orders goods from a distant place, to be shipped by a common carrier, and the order is accepted and the goods shipped, the delivery to the common carrier is a delivery to the purchaser, the common carrier being the agent of the purchaser to receive the goods, and, when this is done, the title, without more, passes from the seller to the buyer, yet in this State there seems to be a statutory exception to this general rule. Section 3546 of the Civil Code of 1895 provides that title to certain articles does not pass until they are paid for; and cotton is one of the articles mentioned in the statute. It provides that the cotton and other articles mentioned therein "shall not be considered as the property of the buyer until fully paid for, although [they] may have been delivered to the buyer." Conceding, therefore, that a delivery to the railroad on its platform was a delivery to Moss & Co. of the cotton, still the title remained in Sell, the seller, until Moss & Co. had paid for the cotton. It was delivered to the railroad company on the 27th, was consumed by fire on that date, and was not paid for by Moss & Co. until the 29th. Therefore the title was not in Moss & Co., but was in Sell at the time of the fire. This fact was recognized by Sell when he notified Moss & Co. that the cotton had been burned and asked them to pay the draft, and said that he would replace the cotton. Besides, Sell, in taking the bill of lading to himself and attaching it to a draft for the purchase price, varied the general rule above stated, and retained the title to the cotton in him-

self. It is well settled that when the seller of personal property takes from the carrier a bill of lading therefor to his own order, and attaches it to a draft drawn on the buyer, this is a declaration on the part of the seller that he does not part with the title to the goods shipped, but retains the title until the draft which is sent with the bill of lading is accepted and paid; and when the title is thus reserved, the carrier is usually the agent of the seller, and not of the buyer, and the risk is the seller's, and not the buyer's. *Erwin* v. *Harris,* 87 *Ga.* 333 (13 S. E. 513), and authorities cited in the body of the opinion. We have said that the undisputed testimony showed that the draft drawn by Sell on Moss & Co. was paid on October 29. We are not unmindful of the fact that the draft was stamped by the Georgia National Bank as having been paid on October 27. This entry was made by a third person, and, standing alone, would have no probative value, especially as against the positive evidence of the clerk of Moss. & Co. that he in fact paid the draft on October 29 by a check on the bank which itself was paid on October 30. The entry stamped on the draft, that it was paid on the 27th of October, if corroborated by the testimony of the agent of the bank who made it, that the date on which it was stamped was the correct date, would have been sufficient evidence to have made an issue as to that fact. We think the verdict in favor of the defendant is without any evidence to support it, and contrary to well established principles of law; and the judge should have granted another trial.          *Judgment reversed.*