INDIANA HARBOR BELT RAILROAD COMPANY, APPELLANT, V. ABRAHAM B. ALPIRN, APPELLEE.

296 N. W. 158

FILED FEBRUARY 4, 1941.   No. 30947.

. *Anderson & Meissner*, for appellant.

*Monsky, Grodinsky, Marer & Cohen*, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This is an action to recover demurrage charges on a carload of scrap iron from the shipper, in the amount of $138.24. The pleadings reflect and the record discloses:

On March 20, 1937, the Chicago, Burlington & Quincy Railroad Company received from a shipper at Kleenburn, Wyoming, a carload of small scrap iron, consisting of mining wheels, mixed with 20 to 25 per cent. of hangers or scrap, made out of steel that is malleable. The car was consigned to the defendant at Omaha, Nebraska, by a uniform bill of lading, with instructions to notify him. April 14, 1937, the shipment was consigned by defendant, as shipper, to himself at Chicago, Illinois. The car, by order of the defendant, was delivered to the American Steel Foundries at Indiana Harbor over plaintiff's switching tracks, plaintiff having received the car from Chicago, Burlington & Quincy Railroad Company, as a common carrier, for switching and delivery. The car was rejected. May 3, 1937, plaintiff wired defendant by its district freight claim agent of the New York Central System, of which plaintiff is a part, showing rejection of the car and requesting that disposition thereof be made. Defendant made no disposition of the car. Subsequently, a telegram, dated May 12, 1937, was sent by plaintiff to defendant, showing charges against the car in the amount of $541.92, to increase at the rate of $5 a day for demurrage, and requesting that disposition be rushed, stating: "Wire if you (defendant) will protect charges." May 14, 1937, plaintiff wired defendant that car was rejected by the American Steel Foundries, was not ordered, impossible to use, and to "rush disposition." May 18, 1937, plaintiff wired defendant: "Failure to receive disposition on car * * * within forty-eight hours we will be

obliged to sell under bill lading conditions, involving extra auction, advertising expense and demurrage. Have we your authority to sell at private sale without prejudice to bill lading conditions? Answer promptly." May 18, 1937, defendant replied by letter to plaintiff, referring to the car of scrap iron, and asking plaintiff to contact railroad companies and foundries which might be interested in purchasing such material, to obtain best price they would pay and wire immediately, stating: "However, do not put this car up for sale as a distressed car by the claim department as this will naturally depreciate the value of the material." Pursuant to this letter, efforts were made by plaintiff to secure bids from various dealers and brokers in the scrap-iron business, but it received no bids before the date of May 20, 1937, when this fact was communicated to the defendant by telegram, which asked what action should be taken. May 22, 1937, plaintiff, by telegram, made known to defendant that an offer of $500, constituting the best offer, had been received, and showing the charges to date to be $596.92, and further stating: "Have we your authority to accept and send you balance due bill for outstanding charges?" June 8, 1937, the amount of $500 was credited to freight charges of defendant's account, leaving an amount due, for which plaintiff sues.

The defendant cross-petitioned, setting forth failure on the part of the plaintiff to comply with the terms of the bill of lading by selling the scrap iron, without authority for so doing, at private sale, and further alleging that the reasonable value of the material was $974.24, and prayed judgment accordingly.

Plaintiff's amended answer to defendant's cross-petition alleged failure of defendant to make written claim and demand on plaintiff for damages for disposition made of the shipment by plaintiff within nine months, as required by law, thus waiving the provisions of section 4 (b) of the bill of lading by ordering and requesting shipment to be sold at private sale. At the conclusion of the evidence, which was heard before a jury, the plaintiff moved for a directed

verdict, in which defendant joined, asking for judgment on his cross-petition.

The court found that there was due plaintiff from defendant the sum of $638.24, and due defendant from plaintiff on his cross-petition the sum of $800, leaving a net amount due defendant from plaintiff of $161.76. Judgment was so entered. Motion for a new trial was submitted and overruled, from which ruling plaintiff appeals.

The evidence relating to the value of the contents of the car need not be detailed. The trial court determined the fair market value thereof as a question of fact, amply supported by the record.

Plaintiff contends that defendant failed to give notice of a claim for loss or damage, as required by 49 U. S. C. A. sec. 20 (11), which reads:

"Any common carrier, railroad, * * * receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered * * * *Provided further,* That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

The bill of lading, section 2 (b), required written notice of claim under the interstate commerce act by the Cummings amendment thereto, and acts amendatory, and forming a part of the bill of lading. Plaintiff's amended answer to defendant's cross-petition alleged that said provisions had formed a part of the bill of lading and were binding on the shipper on an interstate shipment. Defendant made no written claim.

Many cases cited by plaintiff, including *Georgia, F. & A. Ry. Co. v. Blish Milling Co.*, 241 U. S. 190, 36 S. Ct. 541, affirming 15 Ga. App. 142, 82 S. E. 784; *Erie R. Co. v. Stone*, 244 U. S. 332, 37 S. Ct. 633; *Chesapeake & O. Ry. Co. v. Martin*, 283 U. S. 209, 51 S. Ct. 453, and *Gilinsky v. Illinois C. R. Co.*, 98 Neb. 858, 154 N. W. 730, establish the rule that failure to give written notice of a claim by a shipper, as required by law, after reasonable time for delivery has elapsed, is a bar to an action by the shipper.

In the case of *Chesapeake & O. Ry. Co. v. Martin, supra,* the court held: "Where a bill of lading for an interstate shipment provides that claim, in case of failure to make delivery, must be made in writing to the carrier within six months after a reasonable time for delivery has elapsed, the reasonable time meant is such time as is necessary to transport and make delivery of the shipment in the ordinary course of business, in the circumstances and conditions of the transaction."

Plaintiff contends that the reasonable time would be calculated either from and after May 5, 1937, which is 48 hours from the date of notification of rejection of the car, or a reasonable time after June 8, 1937, when the car was sold by the plaintiff. All negotiations for the disposition of the car were had between plaintiff and defendant, the latter being both consignor and consignee; therefore, any notice given by defendant would have the effect only of informing the plaintiff of that which it already knew. The loss was occasioned by a positive and affirmative act on the part of the plaintiff in selling the scrap iron at private sale. Plaintiff's action was brought in municipal court in November, 1937, which was prior to the nine-month period in which defendant would be required to file his claim, as heretofore stated. Under the circumstances, failure of defendant to give notice as required under the authorities cited is not a bar to defendant's right to recover.

The following rule announced in 9 Am. Jur. 920, sec. 803, prevails: "The general rule is that failure to give notice of a claim for damages or loss in accordance with a

stipulation in a contract for the shipment of goods is excused, or is inapplicable, where the carrier has or is chargeable with actual knowledge of all the conditions as to damages that a written notice could give."

When an action of this nature is instituted, the shipper may avail himself of the right to counterclaim or set-off, as provided in sections 20-813, 20-814, 20-816, and 20-818, Comp. St. 1929.

As announced in 13 C. J. S. 759, sec. 318 (b) : "Practically any matter which tends to defeat or diminish the carrier's right of recovery, either in whole or in part, may be asserted by way of defense, provided it has been properly pleaded. Also, it is generally held that defendant may set off, or counterclaim for, a valid claim or demand against the carrier, either to defeat or reduce its recovery, or to obtain affirmative relief against it for any excess. It is now fairly well established that this right of set-off or counterclaim is not affected or restricted by the provisions of the Interstate Commerce Act, or similar state statutes; but prior to the decision of the United States supreme court in *Chicago & N. W. Ry. Co. v. Lindell,* a number of cases, most of which may now be regarded as overruled, denied the right to maintain a counterclaim or set-off, on the theory that the allowance thereof would be to provide a means for avoiding statutory rules and restrictions against discrimination and rebates."

Obviously, the defendant followed the case of *Chicago & N. W. Ry. Co. v. Lindell,* 281 U. S. 14, 50 S. Ct. 200, in which case the rule as above quoted was settled. The opinion determined the manner of procedure under the California statutes which are, in all respects, like those of Nebraska, affecting counterclaims, set-offs and cross-claims or demands.

The adjustment of defendant's demand by cross-claim in plaintiff's action, rather than by independent suit, is favored and encouraged by law. Such practice serves to avoid circuity of action, multiplicity of suits, inconvenience, expense, unwarranted consumption of the court's time, and injustice.

Citation of authority is deemed unnecessary. The defendant followed a recognized procedure in filing his counterclaim.

Section 4 (b) of the bill of lading provides, in part, for the sale of materials by public auction and published notice of the time and place of sale, and further that a 30-day period must elapse before the publication of the notice of sale; this to occur after notice that the property is refused or remains unclaimed, as the case may be. Plaintiff's contention is that defendant waived the foregoing provisions of the bill of lading by authorizing plaintiff to sell the scrap iron at private sale. Defendant did not agree to accept the offer of $500 obtained by plaintiff, did not accept, and did not authorize the plaintiff to proceed to sell the scrap iron at private sale. During the course of the negotiations, the general attorney for the plaintiff informed defendant to dispose of the car, or it would be sold under the terms of the bill of lading. After the sale, the defendant received a letter from the same source, showing the application of the proceeds of the sale and indicating that suit would be brought to collect the balance due. The bill of lading is a creature of the plaintiff, and it is duly bound to follow its own terms. No act on the part of the defendant hindered the plaintiff from selling the scrap iron, as provided by the bill of lading, even though the defendant expressed the desire not to have it sold as a distressed car by the claim department.

In 13 C. J. S. 791, sec. 331, it is said: "By virtue of statutes which have been adopted in many jurisdictions, a carrier may be entitled to enforce his lien by a sale of the goods after a specified time if the freight remains unpaid; and especially is this true in the case of perishable goods. If the statutory provisions are strictly complied with, the carrier is not liable as for conversion. It is essential, however, that there be strict compliance with all material provisions, such as those relating to notice to the owner or advertisement of the sale; and, unless there has been a waiver of the statutory requirements by the owner of the goods, a sale of property by the carrier amounts to a conversion when it is not made in accordance with the statute authorizing it."

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." (Cases cited.) 26 R. C. L. 1098, sec. 3.

"Any unlawful interference or exercise of dominion with respect to the property by which the owner is damnified is sufficient." 26 R. C. L. 1110, sec. 20.

In the case of *Briggs v. Boston & L. R. Co.*, 6 Allen (Mass.) 246, 83 Am. Dec. 626, the court held: "If a carrier who has a lien on goods for freight wrongfully sells them, he is liable to an action for the conversion; and the measure of damages is the market value of the goods, deducting the amount of the lien."

The foregoing authorities are applicable. In the instant case the plaintiff exercised dominion over the carload of scrap iron to the exclusion of and in a manner inconsistent with the owner's rights. 26 R. C. L. 1098, sec. 3.

We have examined the plaintiff's contention that the liability of the carrier in the instant case was that of a warehouseman, and the goods, being hazardous, could be sold under section 88-138, Comp. St. 1929, and the further contention that defendant abandoned the shipment and is estopped to claim conversion. We find them to be without merit.

AFFIRMED.